UNITED STATES

v.

Roger E. JACOBS, 146 44 4579, Mineman
Second Class (E–5), U. S. Navy.

NCM 79 0335.

U. S. Navy Court of Military Review.

Sentence Adjudged 3 Oct. 1978.

Decided 17 June 1980.

LCDR P. B. Haskel, JAGC, USN, Appellate Defense Counsel.

LT J. G. Van Winkle, JAGC, USNR, Appellate Government Counsel.

Before BAUM, EDWARDS and MICHEL, JJ.

EDWARDS, Judge:

Appellant was tried by general court-martial, military judge alone, for a violation of Article ·118, Uniform Code of Military Justice (UCMJ), 10 U.S.C. § 918, of murder by shooting with a .45 caliber semi-automatic pistol. Appellant plead not guilty but was convicted of murder by killing another while engaging in an act which is inherently dangerous to others and which evinces a wanton disregard of human life, contrary to Article 118(3), UCMJ. He was sentenced to a dishonorable discharge, confinement at hard labor for 10 years, forfeiture of all pay and allowances, and reduction to pay grade E–1. The convening authority immediately deferred execution of the sentence to confinement until completion of appellate review. The convening authority approved the sentence as adjudged.

Appellant assigns as error:

I

THE MILITARY JUDGE ERRED IN DENYING THE DEFENSE MOTION FOR APPROPRIATE RELIEF WHICH ATTACKED THE ADEQUACY OF THE PRETRIAL ADVICE OF THE CONVENING AUTHORITY'S STAFF JUDGE ADVOCATE (SEE UCMJ, ART. 34).

II

THE EVIDENCE THAT APPELLANT'S CONDUCT POSED A DANGER TO MORE THAN ONE OTHER PERSON AS REQUIRED FOR A CONVICTION OF MURDER UNDER UCMJ, ART. 118(3) WAS INSUFFICIENT AS A MATTER OF LAW OR, ALTERNATIVELY, INSUFFICIENT TO PROVE A VIOLATION OF ART. 118(3) BEYOND A REASONABLE DOUBT.

III

THE MILITARY JUDGE ABUSED HIS DISCRETION WHEN LIMITING DEFENSE EFFORTS TO IMPEACH A CRUCIAL PROSECUTION WITNESS.

IV

INCRIMINATING STATEMENTS BY THE APPELLANT, AND THE FRUITS THEREOF, SHOULD HAVE BEEN EXCLUDED FROM EVIDENCE UPON DEFENSE OBJECTION BECAUSE THEY WERE OBTAINED CONTRARY TO THE UCMJ, ART. 31 AND THE FIFTH AND SIXTH AMENDMENTS, U. S. CONSTITUTION.

V

INADMISSIBLE HEARSAY WAS ERRONEOUSLY RECEIVED IN EVIDENCE OVER DEFENSE OBJECTION.

VI

THE PROSECUTION FAILED TO PROVE BEYOND A REASONABLE DOUBT THAT THE SHOOTING WAS NOT AN ACCIDENT.

VII

THE APPROVED SENTENCE IS INAPPROPRIATELY SEVERE UNDER THE CIRCUMSTANCES OF THIS CASE.

VIII

THE POST–TRIAL REVIEW OF THE CONVENING AUTHORITY'S STAFF JUDGE ADVOCATE IS MATERIALLY MISLEADING AND INCOMPLETE.

We find merit in only the second assignment of error.

I

■ The pretrial advice of the Staff Judge Advocate was adequate as it in-

formed the convening authority of all "factors which would have substantial effect" on the convening authority's decision to refer the charges. *United States v. Rivera,* 20 U.S.C.M.A. 6, 7, 42 C.M.R. 198, 199 (1970). He correctly advised the convening authority that the charge alleged an offense under the code, further advised him that the charge as investigated by the investigating officer did not conform to the substance of the evidence and recommended that the charge be changed to unpremeditated murder, as it was, and that the charge, as recommended, was warranted by the evidence of the investigation. Article 34, UCMJ, 10 U.S.C. § 834. His discussion of the circumstances and available evidence, significant mitigating and extenuating factors and the prior recommendations adequately fulfilled the requirements of a pretrial advice.

## II

Appellant assigns in the alternative two theories, one at law the other in fact, under which the conviction under Article 118(3) can not be sustained. We will discuss the theory of law; however, we find as a matter of fact that the evidence is insufficient to prove a violation of Article 118(3) beyond a reasonable doubt.

■ The evidence shows that the appellant's daughter was in the same area with her father and the deceased;[1] placing the child in the area, however, is not dispositive of the issue. For there to be a violation of Article 118(3) it must be shown from the evidence that the conduct of an accused is inherently dangerous to others in that it is directed towards persons in general rather than against a single individual. The wanton disregard of human life *must* be in the general or multiple sense. *United States v. Davis,* 2 U.S.C.M.A. 505, 10 C.M.R. 3 (1953).

■ It is at this point that we find insufficient evidence to show beyond a reasona-

ble doubt that the accused was engaged in an act inherently dangerous to others. An analysis of the evidence shows that appellant removed a .45 caliber pistol from a gun case sitting on the dining room table, at which he was seated, inserted a loaded magazine, let the slide go forward, and that the weapon discharged; that the victim, who was returning to the dining room from the kitchen, died as the result of a gunshot wound to the head, the projectile having entered below the eye and having exited the back of the head; that an expended .45 caliber projectile was retrieved from the room; that the projectile hit the wall to the rear of the victim and ricocheted; that the weapon's safety mechanisms were operating properly thereby precluding the weapon from discharging solely as the result of the slide going forward and chambering a round, and that the pistol would fire only by pulling the trigger; that in the opinion of a firearms expert it was possible but not likely that a person with the experience level of appellant with this particular weapon (fired by appellant two different times for a total of approximately 100 rounds) would be so surprised by the force of the slide going forward as to fire the weapon; and that the action of "jacking" (ejecting) the unexpended rounds from the weapon after it had discharged is not consistent with the firearms expert's experience in accidental discharge cases he had investigated. Also in evidence were appellant's post-shooting statements that he was going to "scare" the victim, that the gun went off and that he shot the victim; appellant also made the statements, "I shot Chuck" and "I should have never touched the gun. I'm a stupid ass." Other evidence was introduced tending to show that the victim and appellant's wife were "lovers" and that appellant had ample opportunity to know of this.

At issue in this case is whether the government has proven beyond a reasonable doubt that the conduct of appellant was

---

1. This fact was introduced by a pretrial admission made by appellant. Appellant contends that the admission is not sufficiently corroborated. Independent evidence, albeit circumstantial, was introduced which corroborated the essential fact of another person in the area beside the victim sufficiently to justify an inference of its truth. Paragraph 140a (5), *Manual for Courts-Martial, 1969 (Rev.)* (MCM).

indicative of such a wanton disregard of human life, in the general or multiple sense, as to evince a heedlessness of the probable consequences of his actions to such a degree as to show an indifference that death or great bodily harm to others was likely to ensue. We do not believe the government has met this burden. From our review of the evidence we cannot find beyond a reasonable doubt that appellant intended to "scare" the victim by actually firing a round in the general vicinity of the deceased, an act which could foreseeably be seen as dangerous to "others" through ricocheting action, or for that matter, through penetration to the upper level of the house where the wife was making beds, given the facts before us. Therefore, a conviction of Article 118(3), UCMJ, can not be sustained.

■ We must now decide whether the evidence will support a finding of guilty beyond a reasonable doubt to a violation of the lesser included offense of Article 119, UCMJ, 10 U.S.C. § 919, which proscribes involuntary manslaughter by culpable negligence. We are convinced that the loading of the pistol, having it in a condition so that it could be fired, and then handling it in such a manner with an intent to scare the victim, with the cumulative result that the weapon discharged, led to the killing of the victim, an act prohibited by Article 119 when viewed in the light of human experience, the death being a foreseeable result even though death might not, necessarily, have been a natural and probable consequence of appellant's acts. We are convinced beyond a reasonable doubt that appellant by his acts of loading the pistol, having it in a ready to fire position, and having it pointing in the general direction of the victim while intending to scare the victim, this itself an assault, along with all the other evidence of record, is sufficient to sustain a conviction under either Article 119(b)(1) or Article 119(b)(2), UCMJ.

### III

Defense counsel, during cross examination, attempted to show that a witness who was crucial to the government's case had engaged in sexual relations with the victim while she was married. When asked by the military judge as to why he was introducing the acts of misconduct, that is, adultery, defense counsel stated that he was offering the acts for both evidence of the character of the witness as well as of her bias. The military judge, in ruling on the timely objection by the prosecution, would not permit evidence of adultery as probative of either good or bad conduct. The military judge did state, however, that he would permit evidence of sexual relations between the witness and the victim to show possible bias on the part of the witness.

Defense counsel thereafter began to ask a question of the witness which was phrased in such a manner as to elicit an admission of adultery; this line of questioning was, once again, objected to by the prosecution. At this point defense counsel withdrew his question and said he would proceed in a different way. He then cross-examined the witness in such a manner as to show that she would have helped out the victim as a friend to protect the victim's name, or to help him since he was gone. Defense counsel then attempted to determine if the witness had committed adultery with her husband's brother, but he was not permitted to do so. Without making any further attempts to show that the witness had engaged in sexual relations with the victim as opposed to committing adultery, the defense counsel closed his cross-examination.

■ Under the present provisions of the *Manual for Courts-Martial* found at paragraph 153*b* 2(b), it is permissible, on cross-examination of any witness other than the accused, to adduce that the witness has committed an offense involving moral turpitude or which otherwise affects his credibility. We note that the broad and sweeping language of this paragraph is the minority view in jurisdictions within the United States. The ability to cross-examine concerning individual acts of misconduct has, in this jurisdiction, been considered to be somewhat broad. Yet, we must be aware that the purpose under this rule is to

permit impeachment by admission of individual acts of misconduct which would diminish the credibility of the witness in the eyes of the trier of fact. Is the witness truthful, is he or she worthy of belief? Professor McCormick views misconduct "such as false swearing, fraud and swindling as relevant to truthfulness." McCormick, Evidence § 42 (1954). Professor Wigmore is of the view that robbery, assault and adultery do not directly indicate an impairment of the trait of veracity while fraud, forgery and perjury do so indicate. 3A Wigmore, Evidence § 982 (Chadbourn rev. 1970). This specific issue has not been addressed by the Court of Military Appeals; appellant urges upon us that "moral turpitude" is a fluid concept, and that it is capable under our law of being tested by objective standards. *United States v. Johnson*, 1 M.J. 152 (C.M.A.1975). We note that adultery is punishable by a maximum sentence including a dishonorable discharge and confinement at hard labor for one year. Paragraph 127c, *MCM*, Table of Maximum Punishments. It is also arguable that adultery by a married person involves deceit of, and fraud upon, the aggrieved spouse no matter what the maximum punishment authorized for the offense. *See United States v. Keleher*, 14 U.S.C.M.A. 125, 33 C.M.R. 337 (1963).

We are also aware that the President of the United States recently prescribed new Military Rules of Evidence to take effect on September 1, 1980 which would replace the present "rule" with a rule taken from the present Federal Rules of Evidence. *Executive Order No. 12198*, 45 Fed.Reg. 16932 (1980). *See* Federal Rules of Evidence 608(b). Under this rule, specific instances of conduct may be inquired into on cross-examination of the witness if, in the discretion of the military judge, the specific instances of conduct are probative of truthfulness or untruthfulness. We believe this to be the better view, grounded on the premise that the evidence attempting to be adduced is admissible "if probative of truthfulness or untruthfulness." Federal Rule of Evidence 608(b). Under any circumstances, we find that the military judge did not abuse his discretion.

It is further noted that the military judge expressed a willingness to permit cross-examination as to whether the witness had engaged in acts of sexual intercourse with the victim as probative of showing possible bias on the part of the witness. This was also a ruling within his discretion. Defense counsel, when presented with this opportunity, abandoned his effort to elicit such testimony. We find his abandonment dispositive of the issue notwithstanding the ruling of the military judge.

## IV, V, VI, VII and VIII

We have closely reviewed the remaining assignments of error and find them without merit.

Only so much of the findings of guilty to the charge and its specification is affirmed as finds that appellant did unlawfully kill in violation of Article 119, UCMJ. The sentence is set aside; a rehearing on the sentence is authorized.

Senior Judge BAUM concurs.

MICHEL, Judge (concurring in the result):

I concur in the result. Although I disagree with the majority in its analysis of the concept of "inherently dangerous to others," the evidence of record convinces me beyond a reasonable doubt that appellant is guilty of a violation of Article 119(b).