UNITED STATES, Appellee

v.

LOUIS C. McDONALD, Private E–1, U. S. Army, Appellant

4 USCMA 130, 15 CMR 130

No. 2572

Decided April 9, 1954

LT COL James C. Hamilton, U. S. Army, for Appellant.
LT COL William R. Ward, U. S. Army, for Appellee.

## Opinion of the Court

ROBERT E. QUINN, Chief Judge:

The accused, McDonald, was convicted by general court-martial in Korea of unpremeditated murder, a violation of Article 118, Uniform Code of Military Justice, 50 USC § 712. He was sentenced to dishonorable discharge and confinement at hard labor for twenty-five years. Intermediate appellate tribunals have affirmed the findings and sentence. We granted the accused's petition for review to determine two issues:

1. Whether the evidence is sufficient to support a finding of guilty of unpremeditated murder under Article 118(3).

2. Whether the instructions on unpremeditated murder were correct as a matter of law.

On the night of the incident upon which the charge is based, the accused, Corporal Brown—the deceased—and several members of Company C, 73d Tank Battalion (Medical), were drinking liquor in a squad tent. Suddenly an argument developed between the accused and Brown, but they were separated before any blows were exchanged. After peace had been restored, the accused provoked a further argument, during the course of which he drew a pistol from its holster. Before he could insert a clip of ammunition into

**131**

the weapon, however, the clip was struck from his hand by another soldier. Thereupon, Corporal Cholakoff, who was standing at the opposite end of the tent, drew his pistol. When an attempt to disarm him failed, the others fled from the tent. The accused recovered his ammunition clip and started in Brown's direction. As he approached Brown, he fired one shot. Brown seized the accused and both fell to the ground. Cholakoff then fired one shot into the ground, hoping, he explained, to divert the attention of the accused and thus terminate the affray. However, the pair continued their struggle for the pistol, during the course of which two further shots were fired, one of which struck Brown in the neck and emerged through his skull. Covered with blood, the accused staggered from the tent, surrendering his pistol to an officer who was attracted to the scene by the gunfire. As Cholakoff left the tent, he exchanged pistols with a fellow-soldier, who immediately cleaned Cholakoff's weapon. Shortly after the shooting Brown died.

The accused's version of the inception of the argument with Brown, as related in a pretrial statement, was in substantial accord with the description of all the witnesses. However, he asserted that after that argument appeared to be over, Brown suddenly struck him and said, "Come on, I'll fight you." The accused refused to fight stating he had no reason to do so. At this point Cholakoff drew his pistol, announcing that he was Brown's friend. Thereupon, the accused drew his own pistol, and an ammunition clip. Before he could insert the clip, someone struck it from his hand. Retrieving the clip, he started to leave the tent but was prevented from doing so when Brown seized him and both fell to the ground. While there, he pulled back the slide, inserting a round in the chamber. When they regained their feet Brown continued to grapple with him, locking one hand over the weapon. A shot was fired at the rear of the tent and he heard his own weapon fire three times. Seeing blood flowing from Brown's neck, he wrested the pistol from his grasp and ran from the tent. He denied an intention of firing the weapon, stating Brown's death was an accident. His testimony at the trial was consistent with his pretrial statement. In addition, he specifically denied that he had shot Brown in self-defense.

The court was fully aware of the factual issue of whether the deceased was killed by Cholakoff or by the accused. That issue was highlighted by the testimony that Cholakoff had exchanged pistols with a companion immediately after the shooting, and, at the time of the trial of the instant case, charges alleging that he murdered Brown were pending against him. Since none of the missiles fired by either were recovered, the court was required to resolve this issue without the aid of ballistic evidence. They resolved it adversely to the accused, and this resolution is supported by substantial evidence. It should not, therefore, be disturbed. United States v. McCrary, 1 USCMA 1, 1 CMR 1; United States v. O'Neal, 1 USCMA 138, 2 CMR 44.

The specification of the Charge in this case alleges that the accused did:

". . . murder Corporal Delmar Hanson Brown by means of shooting him with a pistol, caliber 45."

This follows the language of Form 85, Appendix 6c, Manual for Courts-Martial, United States, 1951, and is the appropriate method of alleging the crime of unpremeditated murder under either subdivision (2) or (3) of Article 118, *supra*. United States v. Davis, 2 USCMA 505, 10 CMR 3; United States v. Holsey, 2 USCMA 554, 10 CMR 52. Under such a specification, the prosecution was free to establish the accused's guilt of the offense by evidence tending to show either an intent to kill or inflict great bodily harm, or, that at the time of the homicide, he was engaged in an act inherently dangerous to others and evincing a wanton disregard of life. Consequently, the instructions of the law officer depend entirely upon the circumstances of the killing as shown by the evidence.

At the outset of the trial the prosecution made an opening statement in

132

which it declared that it proposed to show both aspects of unpremeditated murder. When the presentation of evidence had ended the law officer combined the distinguishing elements of both types of unpremeditated murder in his instructions. He charged the court that the essential elements of the offense were:

"(1) That the victim named is dead.

"(2) That his death was caused by an unlawful act or omission of the accused, as alleged; and

"(3) That at the time of the killing, the accused intended to kill or inflict great bodily harm or was engaged in an act inherently dangerous to others and evincing a wanton disregard of life."

Predicating its contention upon the view that the evidence indicates that the accused's actions were directed solely against Brown, the defense argues that permitting the court to return a finding of guilty based upon either an intentional killing, or one characterized by an inherently dangerous act evincing a wanton disregard of life, materially prejudiced the accused. In support of this position, the defense relies upon the decision of this Court in United States v. Davis, *supra*. There we held that the conduct proscribed by Article 118(3) is only that which is inherently dangerous to others in the general or multiple sense, as distinguished from a single individual in particular. Since the evidence in that case conclusively established that Davis' conduct was directed toward his victim alone, and the lives of no other persons were placed in jeopardy, we held the error prejudicially erroneous.

Our review of the evidence in this case convinces us that both aspects of unpremeditated murder were established by substantial evidence. No problem is presented by the issues framed in this case, nor by any contention of the accused, respecting the sufficiency of the evidence to establish an intentional killing. We proceed immediately to consider, therefore, the sufficiency of the evidence to establish a violation of Article 118(3), *supra*.

The testimony of all of the witnesses, including that of the accused, shows that during the course of an argument between the accused and his victim, the former drew a lethal weapon from its holster. At the time both were in the limited area of a squad tent filled with soldiers, most of whom were intoxicated. When the ammunition clip was struck from his grasp, he was not deterred from his purpose long, for he immediately retrieved it and inserted it in the weapon. The evidence further shows that an effort to divert his attention by firing a shot into the ground was similarly unsuccessful. With the pistol now loaded, he turned on Brown who seized him in an effort to protect himself. During the course of their struggles, according to the accused's testimony, he drew back the slide of the gun, placing a round in the chamber and cocking it. While this struggle was in progress all except Cholakoff and the struggling pair sought to flee from the tent. During the struggle, occasioned solely by the accused's actions, the accused fired the weapon three times, killing Brown. There can be no doubt that the accused intended to fire the pistol, otherwise he would not have drawn back the slide during the course of his struggles. If he discharged the weapon without intending to kill or injure Brown, as he contended, then he did so for another reason undisclosed by the evidence. Firing a pistol under these circumstances certainly was an act inherently dangerous to every soldier in the close confines of that tent as well as to those in the immediate vicinity. In addition, this act evinced a wanton disregard of human life in general as distinguished from wanton disregard for the life of one particular person. The fact that the particular person, toward whom, under one view of the evidence, all his acts were directed, was killed is immaterial. Therefore, we cannot accept the first contention of the accused.

As noted above, the instructions of the law officer upon a charge of unpremeditated murder are predicated upon the theory of the case indicated by the

evidence. Here, the specification is sufficiently broad to permit a finding of unpremeditated murder upon either aspect of that crime. The prosecution expressly relied upon the capacity of the evidence to show both types. Finally, a sound basis for a finding upon either theory was established by the evidence. Under these circumstances, the question is, should the law officer select but one theory of the case as the basis for his instructions, or may he properly submit both for the court's determination?

Murder, as defined under the Articles of War, is "the unlawful killing of a human being with malice aforethought." Manual for Courts-Martial, U. S. Army, 1949. Article 118 of the Code, supra, eliminated the term "malice aforethought" and substituted the particular acts from which malice could be implied. No change, however, was effected in the substantive crime of murder. The different states of mind were set out in a separate subdivision as the basis for providing separate punishments for each, and to permit each to be more easily dealt with at the trial. See United States v. Craig, 2 USCMA 650, 10 CMR 148. It is clear from this that Article 118, supra, defines but one crime. Subdivisions (1) and (4) set forth aggravating circumstances which will justify the imposition of the death penalty, and subdivisions (2) and (3) describe the states of mind characterizing murder in a lesser degree. United States v. Davis, supra. Under this interpretation of the Article the instructions of the law officer are properly based on both aspects of subdivision (2) and (3) only if the evidence fairly establishes both. See People v. Sullivan, 173 NY 122, 65 NE 989.

In this case, as we have indicated, the evidence provided a sound basis for a finding upon either aspect of the crime. Therefore, the law officer correctly combined the essential elements of both aspects of the crime in his instructions.

The decision of the board of review is affirmed.

Judges LATIMER and BROSMAN concur.