UNITED STATES

v.

**John W. BERG, 075 44 6489, Master–at–Arms First Class (E–6), U.S. Navy.**

**NMCM 87 3466.**

U.S. Navy–Marine Corps Court of Military Review.

Sentence Adjudged 12 March 1987.

Decided 10 Feb. 1989.

Robert A. Kiernan, Esquire, Civilian Defense Counsel.

Lt. Wendell M. Sims, JAGC, USNR, Appellate Defense Counsel.

Lt. Robert A. Kemins, JAGC, USNR, Appellate Government Counsel.

Before BYRNE, ALBERTSON and JONES, JJ.

**568**

ALBERTSON, Judge:

Contrary to his pleas, appellant was convicted of unpremeditated murder, in violation of the Uniform Code of Military Justice (UCMJ), Article 118, 10 U.S.C. § 918, by a general court-martial composed of officer and enlisted members. The approved sentence extended to life imprisonment, total forfeiture of pay and allowances, reduction to pay grade E–1, and a dishonorable discharge.

Appellant claims the military judge erred when he instructed the members that appellant could be found guilty under Article 118(3) of the UCMJ if they found his act was inherently dangerous to others, for the reason that the evidence was insufficient as a matter of law and fact to show a violation under that section of the Code. Because it was improper to have given the instruction, appellant asserts prejudicial error requiring a setting aside of the findings. We agree. Appellant further asserts that he was prejudiced by the military judge's refusal to allow the defense to lay a foundation for the admission of the results of an exculpatory polygraph. We agree.

I

The following summary of the parties' positions will help clarify this issue. On 23 February 1986, MS2 Heidi Habelt died of a gunshot wound to her head while in the apartment she shared with appellant and her two children near Naval Air Station, Moffett Field, California. The events leading to her death are disputed. Appellant testified that his .357 Magnum revolver, which killed Habelt, discharged during the course of his struggle to save her life. He claimed that after an argument between them, Habelt obtained his gun from his side of their closet, that he thought she was going to do "something foolish" as she had a "glazed look on her face," and that when appellant sought to disarm her by twisting the gun up and out of her grip, it inadvertently fired and killed her. Appellant, throughout the proceedings, maintained that he had no intent to injure Habelt in any way, and that her death was an accident, for which he bore no legal responsibility. The defense also presented evidence that Habelt had been in a mental hospital as a teenager following a suicide attempt. No one else was present in their bedroom at the time.

The Government asserts, in the alternative, that appellant intended to kill Habelt by firing the revolver, or that his act of intentionally pulling the trigger was inherently dangerous to others and evinced a wanton disregard of human life. To support the latter theory, the Government introduced evidence showing that bullets fired from the weapon could have penetrated the ceiling of the apartment and struck a neighbor who was present in the apartment above that evening.

II

The charged offense was unpremeditated murder. The specification, as drafted, sufficiently alleged that offense. Two sections of Article 118, UCMJ, deal with the offense of unpremeditated murder. The Government presented evidence seeking to prove guilt under either section, or both.

Sections (2) and (3) of Article 118 read as follows:

> Any person subject to this chapter who, without justification or excuse, unlawfully kills a human being, when he
> . . .
> (2) intends to kill or inflict great bodily harm; or
> (3) is engaged in an act which is inherently dangerous to others and evinces a wanton disregard for human life ... is guilty of murder....

■ We view the factual circumstances of the alleged homicide here as falling solely within the scope of Article 118(2) and not within that of Article 118(3). For a violation of Article 118(3) to exist, the evidence must show that the conduct of an accused is inherently dangerous to *others* in that it endangers the lives of more than one *and* that *the victim received the fatal injury without the dangerous act being specifically directed at him.* United States v. Davis, 2 U.S.C.M.A. 505, 10 C.M.R. 3

(1953); *United States v. Holsey*, 2 U.S.C.M. A. 554, 10 C.M.R. 52 (1953); *United States v. Jacobs*, 9 M.J. 794 (N.C.M.R.1980).[1]

 Although the Government presented evidence that tended to show that another person could have been endangered by appellant's actions that night, appellant's alleged animus was directed solely at the victim, and resulted in her death. Under the interpretation of Article 118(3) set forth by the Court of Military Appeals, the evidence is insufficient as a matter of law to establish a necessary element under Article 118(3). Hence, the military judge's instruction explaining the elements of the charged offense was erroneous, because, in a single instruction, it advised the court members that both sections of Article 118 were applicable to their deliberations and permitted them to find unpremeditated murder under either theory. This instruction mistakenly advised and authorized the members to find appellant guilty of unpremeditated murder on a theory not supported by the evidence. It is clear from their findings that the members did not believe appellant's denial of culpability in this incident; moreover, while the facts as marshalled by the prosecution may have supported a finding of guilty of unpremeditated murder laid under Article 118(2), the facts, as a matter of law, do not support the Article 118(3) theory relied on by the Government. The members should have been instructed that appellant could be found guilty of unpremeditated murder because he intended to kill or to inflict great bodily harm or found guilty of some lesser degree of homicide. A court-martial cannot be permitted to find an accused guilty of an offense not reasonably raised by the evidence. *See, e.g., Holsey*, 10 C.M.R. at 56. Because we are unable to ascertain the theory of unpremeditated murder upon which appellant was convicted, the findings may not stand. *Davis*, 10 C.M.R. at 9. Accordingly, the findings and sentence must be set aside.

## III

 Appellate defense counsel also asserts that the military judge erred in excluding the testimony of a police-appointed polygrapher, because the military judge failed to allow the defense counsel the opportunity to lay an adequate foundation to warrant admission of the exculpatory results of a polygraph examination of appellant. The facts related to this issue are as follows. After the death of Petty Officer Habelt, appellant was investigated by civilian authorities and submitted to a polygraph given by a police-appointed polygrapher. As the results of this exam purportedly indicated no deception by appellant concerning his activities that evening, the civilian charges against appellant were dropped. The military authorities and the Naval Investigative Service thereafter pursued the investigation, leading to appellant's trial and conviction.[2]

At trial, the military judge stated that for appellant's polygraph results to be admissible:

> ... the first obstacle faced by the defense was to show that polygraph evidence generally should be considered by the court. If the court decided that polygraph evidence was sufficiently accepted by the scientific community, then, of course, they would have the burden of laying the further foundation to show that this particular polygraph evidence met whatever tests should be met.

R. 206.

At trial, the defense presented the testimony of the business partner of the appel-

---

1. The seemingly incongruous results under Article 118(3) have been recognized by the Court of Military Appeals. *See United States v. Davis*, 10 C.M.R. at 8–9. Assume an accused is alone in a room with another person, deliberately fires a gun, and kills that person. Under the law as we understand it, if he intended only to scare the other person, and had no intent to kill or wound, and no others were endangered by the act of firing the gun, he could not be convicted of murder. However, if there are two persons present in the room with him, and our accused then fires a gun intending only to scare the both of them, but through mischance kills one of them, the accused may be found guilty of murder under Article 118(3). Notwithstanding the disparate results, the accused's act, intent, and the consequences are the same in both instances.

2. This case was tried prior to the decision of the Court of Military Appeals in *United States v. Gipson*, 24 M.J. 246 (C.M.A.1987).

**570**

lant's polygrapher, who testified as to the general scientific reliability of polygraph test results and of the qualifications of the particular examiner. The military judge, in granting the Government's motion *in limine* to exclude the polygrapher's testimony, found that in this particular case, because he was unable to determine to what degree polygraph results were known to be truthful, and because these particular results touched on the central issue of appellant's actions and intentions the night of Habelt's death, there was a danger that this evidence would confuse and mislead the members. There would be, he said:

> ... no necessity to take the next step of showing, although you have some of it in evidence already, of producing the examiner; and the court will consider that you have made an offer of proof concerning what you would show, were you permitted to proceed with that.

R. 219.

We agree with appellate defense counsel that the military judge's ruling was premised on the test for admissibility of scientific evidence in *Frye v. United States,* 293 F. 1013 (D.C.Cir.1923). Having found polygraph test results lacking in that level of scientific acceptability required by *Frye,* he prevented the appellant from laying a foundation for persuading the court that this test result, which appellant claims shows him to be non-deceptive in his account of his actions on the night Ms. Habelt died, was relevant and admissible. As we have noted, the military judge did not have the benefit of the analysis contained in *Gipson,* where the Court of Military Appeals held that scientific acceptability is merely one factor to consider in determining whether polygraph evidence is sufficiently probative to be admissible in a court-martial. With *Gipson,* an accused must now be allowed to attempt to lay a foundation for favorable polygraph evidence by presenting evidence on the competence of the examiner, the suitability of the examinee, the nature of the particular testing process employed, and other factors if appropriate. *Gipson,*

24 M.J. at 253. In this case, appellant was not allowed to attempt to lay this foundation. Were it not for our resolution of the previous issue above, this case would warrant the same disposition directed in *Gipson.*[3]

The findings of guilty and sentence as approved on review below are set aside. A rehearing is authorized on the Charge and specification. The record is returned to the Judge Advocate General of the Navy.

Chief Judge BYRNE and Judge JONES concur.

---

**3.** We need not decide the question of admissibility of certain evidence admitted under M.R.E. 404(b). *See United States v. Gamble,* 27 M.J. 298 (C.M.A.1988).