UNITED STATES, Appellant,

v.

John W. BERG, Master–at–Arms First Class, U.S. Navy, Appellee.

No. 62,139.
NMCM 87 3466.

U.S. Court of Military Appeals.

June 19, 1990.

For the Accused: *Robert A. Kiernan, Esq.* (argued) *pro hac vice.*

For the United States: *Lieutenant John J. Mulrooney II, JAGC, USNR* (argued); *Captain Wendell A. Kjos, JAGC, USN* and *Lieutenant Robert A. Kemins, JAGC, USNR* (on brief); *Commander P.J. McLaughlin, JAGC, USN.*

*Opinion of the Court*

COX, Judge:

The accused was tried by a general court-martial composed of officer and enlisted members. Contrary to his pleas, he was found guilty of unpremeditated murder, in violation of Article 118, Uniform Code of Military Justice, 10 USC § 918. He was sentenced to life imprisonment, total forfeitures, reduction to pay grade E–1, and a dishonorable discharge. The convening authority approved the sentence.

The Court of Military Review set aside the findings and sentence, holding, *inter alia*, that the military judge erred when he instructed the members that they could find the accused guilty under Article 118(3) (death by an "act . . . inherently dangerous to others"), when such a theory of unpremeditated murder was unsupported by the evidence. 28 MJ 567, 568–69 (1989).[1] In accordance with Article 67(b)(2), UCMJ, 10 USC § 867(b)(2), the Judge Advocate General of the Navy certified the following issue to this Court:

WHETHER THE NAVY–MARINE CORPS COURT OF MILITARY REVIEW ERRED IN HOLDING THAT THE MILITARY JUDGE'S INSTRUCTIONS ON FINDINGS PERMITTING A FINDING OF GUILTY UNDER ARTICLE 118(3), UNIFORM CODE OF MILITARY JUSTICE, CONSTITUTED PREJUDICIAL ERROR ON THE FACTS OF THIS CASE.

For the reasons stated below, we answer the question in the negative and affirm the decision of the United States Navy–Marine Corps Court of Military Review.

On the night of February 23, 1986, Mess Specialist Second Class (MS2) Heidi Marie Habelt, USN, was killed in her apartment bedroom by a gunshot wound to her head from a .357 magnum revolver which was owned by the accused. Except for the accused, there were no witnesses to her death. MS2 Habelt and her two children shared the apartment with the accused in Mountain View, California, near Naval Air Station, Moffett Field. Not surprisingly, the Government's theory of what caused MS2 Habelt's death differed substantially from the accused's account.

At trial, the prosecution asserted that the accused intentionally shot Habelt by firing the revolver at her head or that, in the alternative, the act of firing a gun at an individual in an apartment building was an act inherently dangerous to others. These two theories were based upon the statutory requisites of unpremeditated murder under Article 118(2) and (3) of the Uniform Code, as set out below:

Any person subject to this chapter who, without justification or excuse, unlawfully kills a human being, when he—

\* \* \* \* \* \*

(2) intends to kill or inflict great bodily harm; [or]

(3) is engaged in an *act which is inherently dangerous to others and evinces a wanton disregard of human life* . . . .

is guilty of murder. . . .

*See* para. 43(a)(2) and (3), Part IV, Manual for Courts–Martial, United States, 1984 (emphasis added).

The Government went to considerable lengths to prove its theory under Article 118(2) that the accused had intentionally killed Habelt by shooting her with his revolver. According to a government witness, the accused had threatened Habelt because she was talking in her sleep about an old boyfriend. Trial counsel also called to the stand two of the accused's former girlfriends, and both testified that the accused was violent and had a bad temper. One actually testified that, some years earlier, the accused had threatened her with a

---

1. The accused also claimed before the United States Navy–Marine Corps Court of Military Review that he was prejudiced by the military judge's refusal to allow the defense to lay a foundation for admission of the results of a polygraph. The court held that it was prejudicial to deny the defense the opportunity to lay such a foundation. 28 MJ at 569–70. Our decision in *United States v. Gipson*, 24 MJ 246 (CMA 1987), was announced almost 4 months after this trial concluded.

gun because she had talked about a former boyfriend in her sleep. Other government witnesses testified that the accused and Habelt had had a stormy relationship and that they had overheard the two arguing just shortly before Habelt was killed. The ballistics and forensic evidence showed that the gun was fired at close range, with the gun probably set against the victim's head before it was fired.

The evidence under Article 118(3) was scarce at best. To show that the accused was engaged in an act inherently dangerous to others, the prosecution had a ballistics expert and a carpenter demonstrate that if a .357 magnum revolver were fired through a model of the ceiling structure of the accused's apartment, the discharged bullets could penetrate the structure. There was no evidence, however, that any bullets were fired through the accused's apartment ceiling that night. Powder burns indicated that the barrel of the gun was positioned immediately against Ms. Habelt's head when it was fired. A pathologist testified that the entry wound indicated that the bullet traveled at an upward angle. A forensic investigator testified, however, that blood spatterings were found on a nearby wall at about the same height as Ms. Habelt, indicating that the bullet traveled in a horizontal direction. Thus, there was no definitive evidence to prove that the bullet which killed Ms. Habelt traveled toward the ceiling. To show that the accused had a wanton disregard for human life, the prosecution called as a witness the resident of the apartment above the accused's; he testified that he was in his apartment the night Habelt was killed.

The accused denied ever intentionally shooting Habelt. He presented testimony and evidence that Habelt had been emotionally upset for some time and, in fact, had attempted suicide when she was a teenager. According to the accused, he and Habelt were arguing, and she walked into the bedroom. She then went to the bedroom closet and got his revolver. Fearing that she might "do something stupid," he followed her into the bedroom and tried to get the gun away from her. The accused claimed that, during the struggle, the gun accidentally went off, fatally wounding her in the head.

The military judge provided the following instruction to the members:

You can find the accused guilty of this offense only if you find the elements I am about to list for you beyond any reasonable doubt. The first element is that Heidi M. Habelt is dead. The second, that her death resulted from the act of the accused in shooting her in the head with a .357 magnum revolver on or about 23 February 1986 in Mountain View, California. The third is that the killing of Heidi Habelt by the accused was unlawful, and the fourth element is that *at the time of the killing, the accused intended to kill or inflict great bodily harm or that his act was inherently dangerous to others and showed a wanton disregard for human life.*

\* \* \* \* \* \*

*You will note that the fourth element has two parts.* I will discuss and provide definitions for each part, but *you are advised that either one or the other part would be sufficient.*

(Emphasis added.)

Defense counsel objected to any instructions on an act inherently dangerous to others, arguing that the evidence was insufficient to show a violation of Article 118(3). After the instruction was given, counsel requested that an additional, clarifying instruction also be given because the Government's theories were mutually inconsistent as to the accused's intent at the time of the murder. This request was denied. The members returned a general verdict of guilty.

The Court of Military Review held that the factual circumstances fell solely within the scope of Article 118(2), and not within that of 118(3). That court cited our holdings that, under Article 118(3), "the evidence must show that the conduct of an accused is inherently dangerous to *others* in that it endangers the lives of more than one *and* that the victim received the fatal

injury without the dangerous act being specifically directed at him." 28 MJ at 568.[2] The court held, therefore, that it was prejudicial error to instruct the members on Article 118(3) because "[a] court-martial cannot be permitted to find an accused guilty of an offense not reasonably raised by the evidence" and because it could not be determined upon which "theory of unpremeditated murder" the accused "was convicted." 28 MJ at 569.

The Government makes two arguments on appeal. First, the prosecution was entitled to the instruction on Article 118(3) because the evidence of record showed that appellant's conduct constituted an act inherently dangerous to others and evinced a wanton disregard for human life. Second, this Court's interpretation of Article 118(3) is inapposite to this case.[3]

■ With regard to the first argument, we conclude that the evidence did not warrant an instruction under Article 118(3). *United States v. Davis*, 2 USCMA 505, 510, 10 CMR 3, 8 (1953), was a case in which this Court held that the evidence was insufficient as a matter of law to allow the members to be given instructions on unpremeditated murder under Article 118(3) and that such error was prejudicial since it could not be determined under what theory of murder the members convicted the accused. Specifically, we stated:

[C]onduct within the ban of Article 118(3) of the Code ... is only that which is *"inherently dangerous to others"* in *that it is directed towards persons in general rather than against a single individual in particular—that is,*

where the actor has evinced a *"wanton disregard of human life"* in the general *or multiple sense.* Since, in this case, the evidence disclosed that accused's wicked acts were directed solely against ... [the specific victim]—*so that the lives of no other persons were placed in jeopardy*—it was manifest error, and in prejudicial degree, for the law officer to open the gate to the court-martial for conviction of the accused under Article 118(3).

*Id.* at 511, 10 CMR at 9 (emphasis added). In *Davis*, the accused intentionally shot the victim while committing an armed robbery, placing no other persons in danger. *See also United States v. Dacanay*, 4 USCMA 263, 265, 15 CMR 263, 265 (1954) (instruction to members under Article 118(3) was prejudicial error where evidence failed to show that, by shooting victim in the chest with a .22 pistol, accused had committed an act inherently dangerous to others or that he had a wanton disregard for human life in general); *United States v. Holsey*, 2 USCMA 554, 558, 10 CMR 52, 56 (1953) (instruction to members under an Article 118(3) theory was prejudicial error when facts showed that accused stabbed victim to death in a fight, and there was no other evidence that act was inherently dangerous to others).[4]

■ We are somewhat confused by the holding below that, "[a]lthough the Government presented evidence that tended to show that another person could have been endangered by [the accused's] actions that night, [the accused's] animus was directed

2. *Citing United States v. Davis*, 2 USCMA 505, 10 CMR 3 (1953); *United States v. Holsey*, 2 USCMA 554, 10 CMR 52 (1953); *United States v. Jacobs*, 9 MJ 794 (NCMR 1980).

3. The Government originally argued that the instruction on Article 118(3), Uniform Code of Military Justice, 10 USC § 918(3), was harmless error, but withdrew this argument in light of *Mills v. Maryland*, 486 U.S. 367, 108 S.Ct. 1860, 100 L.Ed.2d 384 (1988), and *Yates v. United States*, 354 U.S. 298, 77 S.Ct. 1064, 1 L.Ed.2d 1356 (1957).

4. *Cf. United States v. Hartley*, 16 USCMA 249, 36 CMR 405 (1966) (instruction on Article 118(3)

appropriate where evidence showed accused shot and killed another during fight in room filled with soldiers); *United States v. Judd*, 10 USCMA 113, 27 CMR 187 (1959) (evidence sufficient to sustain conviction under Article 118(3) where accused's shooting at wife endangered her and her daughter); *United States v. McDonald*, 4 USCMA 130, 15 CMR 130 (1954) (instruction on Article 118(3) appropriate where accused shot and killed soldier during fight in tent filled with other soldiers). *See also United States v. Sandoval*, 4 USCMA 61, 15 CMR 61 (1954).

solely at the victim, and resulted in her death." 28 MJ at 569. The fact that accused's "animus" may have been directed toward one specific victim does not preclude an instruction or finding under Article 118(3), so long as his conduct constitutes *"an act inherently dangerous to"* others and shows *"a wanton disregard of human life in general." United States v. Hartley,* 16 USCMA 249, 254, 36 CMR 405, 410 (1966) (emphasis added), quoting *United States v. McDonald,* 4 USCMA 130, 133, 15 CMR 130, 133 (1954). In any event, we are convinced that the factual circumstances of this case fall solely within the scope of Article 118(2).

We do not necessarily agree with the court below that there was evidence to show that the accused's conduct was inherently dangerous to others. Despite the prosecution's experiment showing that a bullet could penetrate the accused's ceiling, there was no showing that any bullets had been fired through accused's ceiling that night. *Cf. United States v. Holsey, supra.* Notwithstanding, there still was no showing of a wanton disregard for human life in the general or multiple sense. *United States v. Davis, supra.* The Government presented no evidence that the accused knew there was anyone in the apartment above his that night or that he intentionally fired the gun in that direction. *Cf. United States v. Judd,* 10 USCMA 113, 27 CMR 187 (1959).

The record overwhelmingly demonstrates that the Government's case was directed at proving the accused guilty of unpremeditated murder under Article 118(2). To accept the Government's argument that an instruction was warranted under Article 118(3) would be to hold that every homicide in which a gun is intentionally fired at a specific individual inside a multiple-family dwelling, regardless of the circumstances, constitutes an act inherently dangerous to others and shows a wanton disregard for human life. We know of no case that supports such a conclusion.[5]

■ With regard to the second argument, there is authority supporting this Court's previous holdings that unpremeditated murder by an inherently dangerous act requires that the conduct be directed at others besides the victim. In many jurisdictions, when murder is not premeditated, the definition of unpremeditated murder becomes one of exclusion.[6] Requiring that an accused's conduct be inherently dangerous to others and evince a wanton disregard for human life in general provides an adequate sanction against one whose actions place the lives of several people in jeopardy even though he never intended to kill any one in particular. *See State v. Russell,* 106 Utah 116, 145 P.2d 1003, 1009 (1944); *People v. Jernatowski,* 238 N.Y. 188, 144 N.E. 497 (1924); *Darry v. People,* 10 N.Y. 120 (1854).

Under the Uniform Code in particular, the legislative history with regard to Article 118(3) expressly states:

Paragraph (3) is a codification of the well-settled common-law rule that, even in the absence of a specific intent to kill or inflict serious bodily harm, the homicide is murder if the offender's conduct was imminently dangerous to others and evinced a wanton disregard of human life. *It is intended to cover those cases where the acts resulting in death are calculated to put human lives in jeopardy, without being aimed at any one in particular.*

Hearings on H.R. 2498 Before a Subcomm. of the House Comm. on Armed Services, 81st Cong., 1st Sess. 1231 (1949) (emphasis added); *see also United States v. Davis,*

---

5. *Compare Moran v. State,* 103 Nev. 138, 734 P.2d 712, 714 (1987) (fact that bullet passed into another apartment during murder not sufficient to satisfy aggravating factor of "knowingly creat[ing] a risk of death to more than one person" so as to allow the prosecution to argue for death penalty under *Godfrey v. Georgia,* 446 U.S. 420, 100 S.Ct. 1759, 64 L.Ed.2d 398 (1980)),

with *State v. Gill,* 3 Or.App. 488, 474 P.2d 23 (1970) (accused's firing rifle into house knowing people then were moving about in house was act inherently dangerous to others).

6. 40 Am Jur 2d, Homicide, § 53 (citations omitted).

*supra.*[7] The court below opined that the rule may cause "incongruous results under Article 118(3)." If "an accused is alone in a room with another person," as in this case, and "deliberately fires a gun" killing the victim, but without any specific intent to kill or injure, "he could not be convicted of [unpremeditated] murder" because no others were endangered by his actions. *United States v. Berg, supra* at 569 n. 1. Without any indication from Congress to the contrary, however, and in the interest of *stare decisis,* we see no reason to abandon the adopted rule that murder by an act inherently dangerous to others requires "a wanton disregard of human life" in general, without the actions of the accused "being aimed at any one in particular."

An analysis of the crime of murder by an act inherently dangerous to others reveals that it is the result of a need to hold one criminally liable when, although an accused did not have malice aforethought, his conduct was such that it evinced an implied malice, a "depraved heart." W. LaFave and A. Scott, *Substantive Criminal Law* § 7.4 at 199–200 (1986). Thus, to require that more than one person be put at risk by an inherently dangerous act and that the wanton disregard be for human life in general is apparently an exercise of legislative discretion, albeit one on which jurisdictions differ. *Id.* at 203 n. 29.

Although such a rule may in fact cause incongruous results, we are bound to interpret the law as Congress has expressly stated it to be; for this Court to change the rule at this juncture would be tantamount to judicial legislation. In addition, such a change might deny the accused due process. *See Bouie v. City of Columbia,* 378

U.S. 347, 84 S.Ct. 1697, 12 L.Ed.2d 894 (1964).

■ An accused may appropriately be found guilty of premeditated murder; unpremeditated murder by a specific intent to kill or inflict grievous bodily harm, or by an act inherently dangerous to others; felony murder; or the lesser offense of manslaughter (Art. 119, UCMJ, 10 USC § 919), depending upon the factual and legal sufficiency of the evidence. By the same token, an accused is still criminally liable when his intent escalates so as to endanger the lives of others, even though his specific intent was directed originally at one individual. *Cf. United States v. Roa,* 12 MJ 210, 212–13 (CMA 1982). In the instant case, the prosecution's evidence showed only a specific intent to kill a particular victim. However, as mentioned, the members were also given an instruction that the accused's conduct may have constituted an act inherently dangerous to others and showed a wanton disregard for human life in general. "Although we cannot know that" the instruction under Article 118(3) in this case "provided the basis for the conviction returned by the" members, "so also we cannot be sure that it did not." *United States v. Davis,* 2 USCMA at 511, 10 CMR at 9.

Accordingly, we answer in the negative the issue certified to us by the Judge Advocate General.

The decision of the United States Navy–Marine Corps Court of Military Review, setting aside the findings and sentence, is affirmed. The record of trial is returned to the Judge Advocate General of the Navy for compliance with that decision.

Chief Judge EVERETT and Judge SULLIVAN concur.

---

**7.** The federal murder statute, 18 USC § 1111, makes a distinction only between first degree (premeditated) and second degree (unpremeditated) murder.