**UNITED STATES, Appellant,**

v.

**John W. BERG, Master–at–Arms First Class, U.S. Navy, Appellee.**

No. 62,139.
NMCM 87 3466.

U.S. Court of Military Appeals.

Submitted Aug. 14, 1990.

Decided Sept. 7, 1990.

For the Accused: *Robert A. Kiernan.*

For the United States: *Commander Thomas W. Osborne, JAGC, USN* and *Lieutenant John J. Mulrooney II, JAGC, USNR.*

Opinion of the Court on Reconsideration

COX, Judge:

The United States has petitioned this Court for reconsideration of our decision in *United States v. Berg,* 30 MJ 195 (CMA 1990), where we agreed with the Court of Military Review [1] that the evidence regard-

---

1. *United States v. Berg,* 28 MJ 567 (NMCMR 1989).

ing an unpremeditated murder charge was insufficient to support a finding that the accused's conduct was "inherently dangerous to others and evince[d] a wanton disregard of human life" under Article 118(3), Uniform Code of Military Justice, 10 USC § 918(3). An instruction given to the members on that theory was, therefore, prejudicial error. Accordingly, we affirmed the decision below and ordered the record of trial returned to the Judge Advocate of the Navy for compliance with our decision. 30 MJ at 200.

The accused was convicted by members of unpremeditated murder, although it could not be determined from the record whether he was found guilty of unpremeditated murder involving an "inten[t] to kill or inflict great bodily harm" (Art. 118(2)), or by "engag[ing] in an act which is inherently dangerous to others and evinces a wanton disregard of human life" (Art. 118(3)). The Government's evidence and theory in the case was that the accused intentionally shot his girl friend in the head at point-blank range with a .357-magnum revolver, while in his apartment bedroom. There were no witnesses other than the accused. The Government offered some evidence, through the results of an experiment, that if the same gun were to be fired in an upward direction, hypothetically a bullet could penetrate the bedroom ceiling and enter the apartment above, possibly injuring the tenant who had been in that apartment at the time of the shooting. There was no evidence, however, that the accused ever fired the revolver in this manner. Indeed, at closing argument, trial counsel, apparently in an effort to convince the members that the accused intentionally murdered the victim under Article 118(2), repeatedly argued that the revolver had been fired only in a "horizontal" direction.

The members were given an instruction under Article 118(3) that they could find that the accused's actions were "inherently dangerous to and show[ed] a wanton disregard *for the life of more than one person.*" (Emphasis added.) After the instruction was given, defense counsel requested a clarifying instruction because the Government's theories were mutually inconsistent as to the accused's intent at the time of the murder. This request was denied, and the members returned a general finding of guilty.

The Court of Military Review reversed, holding that the factual circumstances placed the case solely within the scope of Article 118(2) and that the military judge "mistakenly advised and authorized the members to find ... [the accused] guilty of unpremeditated murder on a theory not supported by the evidence." 28 MJ 567, 569 (1989). We affirmed that holding and now see no reason to disturb it.

The Government avers in its petition for reconsideration that our opinion, which interprets Article 118(3) as "[r]equiring that an accused's conduct be inherently dangerous to *others* and evince a wanton disregard for human life *in general,*" 30 MJ at 199 (emphasis added), is erroneous and contrary not only to the intent of the drafters of Article 118(3), but also to this Court's own precedent. It should be noted here that the Government maintained on appeal a position somewhat inconsistent with the position on which it chose to prosecute this case—that is, at trial the Government sought, and failed, to show that the accused's conduct was inherently dangerous to more than one person under Article 118(3). On appeal, however, the Government has essentially argued that under its interpretation of Article 118(3), it did not need to show that "others" were endangered, but only that another was endangered by the accused's actions.

At the Government's request, we reconsider our opinion to eliminate any possible confusion. In light of the Government's strained construction of our holding, as well as the basis it chose to prosecute this case, it is important that the bench and bar understand the distinction between homicides prosecuted under Article 118(2) and those prosecuted under Article 118(3) of the Uniform Code.

■ Homicides prosecuted under Article 118(3) are those unlawful killings which

result from an accused's committing "an act inherently dangerous to others and" showing "a wanton disregard of human life." The accused must also know that death or great bodily harm was a "probable consequence" of his conduct. Not surprisingly, intentional homicides under Article 118(2) also generally involve death as a "probable consequence"; and they are most often committed by acts which are "inherently dangerous," particularly to the deceased, and show "a wanton disregard" for the victim (*i.e.*, killing by gunfire or other dangerous weapon).

We stated previously that, for unpremeditated murder under Article 118(3), Congress enacted the

> rule that murder by an act inherently dangerous to others requires "a wanton disregard of human life" in general, without the actions of the accused "being aimed at anyone in particular."

> [T]o require that more than one person be put at risk by an inherently dangerous act and that the wanton disregard be for human life in general is apparently an exercise of legislative discretion, albeit one on which jurisdictions differ.

*United States v. Berg*, 30 MJ at 200.

We stated previously that the legislative history, *see United States v. Berg*, 30 MJ at 199, as well as military caselaw, *United States v. Hartley*, 16 USCMA 249, 254, 36 CMR 405, 410 (1966); *United States v. Judd*, 10 USCMA 113, 118, 27 CMR 187, 192 (1959); *United States v. Davis*, 2 USCMA 505, 510, 10 CMR 3, 8 (1953), provide ample precedent for the view that a conviction under Article 118(3) requires that an accused's conduct must always be "inherently dangerous to *others* and evince a wanton disregard for human life *in general*." (Emphasis added.) As we acknowledged earlier in this case, such an interpretation "may cause 'incongruous results under Article 118(3).'" *United States v. Berg, supra,* at 200 (*quoting United States v. Berg*, 28 MJ at 569 n.1). However, this is no basis for us to rewrite the law.

In *United States v. Davis, supra,* this Court saw the law of second-degree murder as unsettled, with little express guidance from Congress regarding Article 118(3). The question then as now was whether Congress intended that the language, "inherently dangerous to others," meant that more than one person must have been threatened or whether "others" was intended in a generic sense and could include just the victim. The only bit of legislative guidance found—"[a] single straw in the wind," 2 USCMA at 511, 10 CMR at 9—was that Article 118(3)

> is intended to cover those cases where the acts resulting in death are calculated to put human *lives* in jeopardy, *without being aimed at any one in particular.*

Hearings on H.R. 2498 Before a Subcomm. of the House Comm. on Armed Services, 81st Cong., 1st Sess. 1231 (1949) (emphasis added).

In addition to this bit of legislative history, we also looked to the seminal case of *Darry v. People*, 10 N.Y. 120 (1854), where the New York Court of Appeals interpreted that state's 1829 second-degree murder statute. Under the statute, second-degree murder included

> any act imminently dangerous to *others*, and evincing a depraved mind, regardless of human life, although without any premeditated design to effect the death of any particular individual.

2 N.Y.Rev.Stat. pt. IV, ch. 1, tit. 1, § 5 (1829) (emphasis added).

The facts in *Darry* are somewhat similar to those in this case. A defendant was convicted of murder after having beaten his wife to death while they were alone in their bedroom. The court in *Darry* held that because the unpremeditated-murder statute expressly used the plural "others," it excluded homicides where the act was imminently dangerous to a single victim. The court held that it was, therefore, prejudicial error for the jury to be given this instruction. *Darry v. People, supra* at 146–49. Over a century later, in 1967, the New York legislature revised its second-degree murder statute to define the crime as an unlawful killing when

[u]nder circumstances evincing a depraved indifference to human life, ... [an accused] recklessly engages in conduct which creates a grave risk of death to *another person,* and thereby causes the death of another *person.* N.Y. Penal Law § 125.25(2) (McKinney 1967) (emphasis added).

the English and American common law to punish an accused for his implied malice, or "depraved heart," by proscribing conduct which was inherently dangerous to another and showed a wanton disregard for human life.

Thus, the requirement that the danger be posed to more than one person was a choice of legislative discretion. *See* W. LaFave & A. Scott, *Substantive Criminal Law* § 7.4 at 203 n. 29. There are indications that a plural interpretation of "others" was too restrictive a construction of depraved heart murder. *See American Law Institute Model Penal Code and Commentaries,* Part II, § 210.2 at 18 n. 24 (1950); Gegan, *A Case of Depraved Mind Murder,* 49 St. John's Law Review 417 (Spring 1975) (hereafter Gegan). Although we acknowledged that other jurisdictions interpreted "depraved heart" murder differently, we retained the plural construction of "others" first announced in *United States v. Davis, supra,* primarily because the lone bit of legislative history for Article 118(3) quoted earlier expressly stated that the statute was designed to proscribe conduct which places *"lives"* in danger and is *not "aimed at any one in particular."* [2]

The practical effect of the plural requirement of Article 118(3) is that, in many situations, the Government may be limited to proving unpremeditated murder by an

intent to kill or inflict great bodily harm [Article 118(2)]; otherwise it may have to settle for involuntary manslaughter under Article 119, UCMJ, 10 USC § 919, even though the accused's conduct was inherently dangerous and showed a wanton disregard for human life—the very kind of depraved-heart conduct that unpremeditated murder was designed to punish. *See* Gegan, *supra.* For example, if an accused, alone in a room with another person, fires a gun at the victim's feet, intending only to scare the victim, and a bullet inadvertently ricochets off the floor, killing the victim, the Government would not be entitled to an instruction under Article 118(3) because no "others" were endangered by the accused's actions, even though the conduct was inherently dangerous to another and showed a wanton disregard for human life.[3] Although we may disagree with this conclusion as a matter of logic, as we stated previously in this case, we are convinced that such a change in the statute should properly come from Congress.

Therefore, we adhere to our earlier holding that it was prejudicial error to allow the instruction under Article 118(3) in this case. The Government chose to prosecute on the evidence and theory that the accused, while alone in his bedroom with the victim, intentionally shot her in the head at point-blank range. Yet the prosecution was allowed the additional and inconsistent instruction that the accused's actions were somehow inherently dangerous to "others" under Article 118(3). We still reject the Government's argument that "every homicide in which a gun is intentionally fired at a specific individual inside a multiple-family dwelling, regardless of

2. *Cf. Commonwealth v. Malone,* 354 Pa. 180, 47 A.2d 445, 446–47 (1946) (defendant convicted of second-degree murder under Pennsylvania common law proscribing acts inherently dangerous to "others" when he accidentally shot his friend, who was the only other person in the room, during a game of "Russian poker."); *Radej v. State,* 152 Wis. 503, 140 N.W. 21 (1913) (defendant convicted under second-degree murder statute proscribing acts inherently dangerous to "others" when he shot a single victim in the back of the head at point-blank range).

3. Likewise, an accused could not be convicted of felony-murder where his felonious assault caused the victim's death. Congress has not included assault as one of the "certain offenses" (burglary, sodomy, rape, robbery or aggravated arson) during which an unlawful killing occurs to warrant conviction for felony-murder. *See* Art. 118(4), Uniform Code of Military Justice, 10 USC § 918(4); para. 43b(4)(d), Part IV, Manual for Courts–Martial, United States, 1984.

the circumstances" is "an act inherently dangerous to others." *United States v. Berg*, 30 MJ at 199. We reiterate that, " '[a]lthough we cannot know that' the instruction under Article 118(3) in this case 'provided the basis for the [accused's] conviction returned by the' members, ... *'so also we cannot be sure that it did not.' United States v. Davis*, 2 USCMA at 511, 10 CMR at 9." 30 MJ at 200 (emphasis added).

We acknowledge that the common law of second-degree murder in other jurisdictions has developed such that an accused may be convicted if his actions are directed not only at others but also at a single victim. We leave it to Congress to revise Article 118(3) to effect such a result, should it choose to do so. Until then, we take the language as Congress used it.

Accordingly, we adhere to our prior decision upholding the decision below which set aside the findings and sentence.

Chief Judge EVERETT concurs.

Judge SULLIVAN concurs in the result.