UNITED STATES, Appellee,

v.

Mark F. McMONAGLE, Private First Class U.S. Army, Appellant.

No. 68,001.
CMR No. 9001787.

U.S. Court of Military Appeals.

Argued Feb. 3, 1993.

Decided Sept. 27, 1993.

For Appellant: *Peter F. Vaira* (argued); *Major James M. Heaton* (on brief); *Captain Emmett G. Wells.*

For Appellee: *Captain Glenn L. Kirschner* (argued); *Colonel Dayton M. Cramer, Lieutenant Colonel Joseph A. Russelburg, Major Timothy W. Lucas* (on brief).

*Opinion of the Court*

GIERKE, Judge:

A general court-martial composed of officer and enlisted members convicted appellant, contrary to his pleas, of murder while engaged in an act inherently dangerous to others, conspiracy to obstruct justice, willful disobedience of a commissioned officer, obstruction of justice, and wrongful discharge of a firearm, in violation of Articles 118, 81, 90, and 134, Uniform Code of Military Justice, 10 USC §§ 918, 881, 890, and 934, respectively. The approved sentence provides for a dishonorable discharge, confinement for 7 years, total forfeitures, and reduction to the lowest enlisted grade. The Court of Military Review affirmed with one judge dissenting. 34 MJ 852 (1992).

This is a companion case to *United States v. Finsel,* 36 MJ 441 (CMA 1993). Both cases arose during Operation Just Cause in Panama. Sergeant Finsel was convicted of obstructing justice by staging a sham firefight to conceal his loss of a pistol. Appellant was one of the willing participants in the sham firefight. Either during or shortly after the sham firefight, depending upon which version of the facts is accepted as true, appellant shot and killed a Panamanian woman, Mrs. Panay.

At the trial the prosecution proceeded on alternative theories under Article 118(2) (murder with intent to kill or inflict great bodily harm) and Article 118(3) (murder while engaged in an act inherently dangerous to others). The court members convicted appellant of a violation of Article 118(3).

This Court granted review of the following issues:

I

WHETHER RECORD EVIDENCE IS INSUFFICIENT TO PROVE APPELLANT SHOT THE VICTIM AS PART OF A CONTINUING RUSE OR HOAX WHERE, AFTER BEING LAWFULLY PLACED ON SECURITY DUTY, HE BELIEVED HE WAS CONFRONTED BY THE ENEMY.

II

WHETHER THE MILITARY JUDGE ERRED BY NEGLECTING TO INSTRUCT THE COURT–MARTIAL AS TO ACCIDENT, MISTAKE OF FACT AND MISTAKE OF LAW WHERE

THERE WAS A CONCEDED BASIS FOR SUCH INSTRUCTION.

## I. *Factual Background*

Appellant's unit deployed to Panama on December 19, 1989. By January 25, 1990, the situation had stabilized. According to appellant's platoon sergeant, Staff Sergeant (SSG) Cavello, "everything was friendly, just about." According to Captain Seider, the unit commander, the threat was low but they were concerned with the possibility of terrorism.

The chain of events leading to the charges in this case began the evening of January 25, 1990, when SGT Finsel and two members of his squad, Private First Class Gussen and appellant, went to a bar/brothel known as the Fenix Club. SGT Finsel left a pistol which he had borrowed from Captain Seider on a table while he went to a back room with a Panamanian woman. As he rejoined his squad members, someone shouted that the military police (MPs) were nearby, causing the three soldiers to hide in a back room. When they came out of hiding about 15 minutes later, the pistol was missing.

SGT Finsel and appellant agreed to stage a sham firefight so that they could claim that the pistol was lost during a firefight. All three soldiers fired their M–16 rifles into the air while standing outside the Fenix Club and then ran toward a local school where the unit command post was located. On the way back, they met several other members of the unit who were responding to the sound of gunfire. SGT Finsel told them that he had been fired upon by men with AK–47 rifles in a black Toyota and had received fire from a rooftop. SGT Finsel then began firing up at a three-story building.

As the sham firefight continued, appellant yelled, "There he goes" or "There they go," and ran down an alley into a courtyard. Appellant began kicking in doors and shouting that "they went in there." The platoon sergeant, SSG Cavello, followed appellant into the courtyard and told him to cool down. A few minutes later SSG Cavello heard appellant shout, "Alto, Stop! I told you to stop." SSG Cavello saw appellant pointing his rifle at an unarmed woman in a wraparound garment. SSG Cavello convinced appellant that the woman was not a threat. Appellant lowered his weapon and returned to the street with SSG Cavello. Captain Sieder ordered the unit to fall back to the school and directed appellant to remain behind as part of a rear security force, along with SGT Finsel and SGT Verrender. As the unit withdrew, SGT Finsel announced, "We're going to stay out here and pull security on this house or blue corner house. I thought I saw someone run in there." Appellant, a member of SGT Finsel's squad, joined him, and SGT Verrender returned to the unit command post.

When Captain Sieder noticed that SGT Finsel had not returned to the school, he directed SGT Verrender to retrieve him. As SGT Verrender walked back up the street, gunfire erupted. Two soldiers heard appellant shout for someone to cover him because he had heard some noise or seen some movement. SGT Miller was in the courtyard with appellant and testified that appellant asked "if he could take a shot." SGT Miller said, "Don't take it, don't take it," because he was trying to confirm appellant's assertion that he had seen a silhouette on top of a building. Appellant asked a second time for permission to fire and again SGT Miller refused. Then SGT Finsel, who was appellant's squad leader, said, "Go ahead and take the shot."

Shortly thereafter, appellant was heard shouting, "Stop!" in Spanish. Gunfire followed. After hearing someone shout that someone had been shot, SGT Verrender entered the courtyard and saw appellant and the victim, Mrs. Panay, who had been wounded. Mrs. Panay died shortly thereafter.

Appellant did not testify on the merits at his trial. In a pretrial statement which was obtained by a criminal investigator the day after Mrs. Panay's death and introduced in evidence, appellant acknowledged his role in the sham firefight. He de-

scribed his encounter with Mrs. Panay as follows:

> I moved across the street towards an alley. I heard fire all over, but I saw something move in the alley. I went down about ten feet and I stopped. Rounds were being fired from all over the place. I couldn't tell where they were coming from, or where they were going. Everyone was just firing up the three story apartment on the main street. I started moving on down the alley and at least fifteen rounds came over my head by about fifteen feet. There was just a burst. There was definitely more than one weapon being fired, and I was in a crouch position. I walked further in and saw rounds hit the rubble which was about a foot in front of me by now. I saw a shadow move across the building in front of me really fast. I said Alto, Alto, and took my weapon off safe, put it on Semi, and fired six pulls of the trigger. I did not count, but I pulled the trigger approximately six times. When I stopped firing, I noticed there were a lot of rounds in the wall at the back of the building. I put my weapon back on safe, ran up to where I shot at the shadow. Not all the way, but close enough to see a man run out and say my wife, my wife. He got about two feet from me saying this. I turned around and started moving back and screamed for a medic. CPL McKinley came to the area. SFC Verranda [SGT Verrender] came over and started taking care of the person I hit.

> \* \* \*

> The alley was dark, I was scared, rounds were fired at me, and over top of me, I saw the silhouette running I said alto twice, it didn't stop so I fired at it.

Two prosecution witnesses, SGT Miller and Corporal Jones, testified that they thought they were receiving fire from atop a building. In addition, the stipulated testimony of several Panamanian civilians indicated that they saw gunfire coming from buildings in the area and from vehicles.

## II. Sufficiency of the Evidence

■ As he did before the Court of Military Review, appellant challenged the sufficiency of the evidence of murder. Appellant was found guilty of a violation of Article 118(3). The elements of that offense are:

(1) That Mrs. Panay is dead;

(2) That her death resulted from the intentional act of appellant;

(3) That appellant's act was inherently dangerous to others and showed a wanton disregard for human life;

(4) That appellant knew that death or great bodily harm was a probable consequence of the act; and

(5) That the killing was unlawful.

Para. 43b(3), Part IV, Manual for Courts–Martial, United States, 1984.

An unlawful killing is one which is "without justification or excuse." Para. 43c(1). A "wanton disregard of human life ... is characterized by heedlessness of the probable consequences of the act or omission, or indifference to the likelihood of death or great bodily harm." Para. 43c(4).

Appellant argues that the sham firefight ended when CPT Sieder placed him on security duty and that, while on security duty, he thought that he was under hostile fire and that he was shooting at an enemy combatant. The Government argues that, when appellant shot Mrs. Panay, he was still perpetuating the sham firefight.

■ The legal issue before us is whether a reasonable factfinder could find appellant guilty, construing the evidence in the light most favorable to the Government. Applying this standard, we hold that the evidence of appellant's guilt is legally sufficient. *Jackson v. Virginia*, 443 U.S. 307, 319, 99 S.Ct. 2781, 2789, 61 L.Ed.2d 560 (1979); *United States v. Turner*, 25 MJ 324 (CMA 1987). Accordingly, we resolve Issue I by holding that a reasonable factfinder could conclude, on the basis of the evidence of record, that appellant was perpetuating the sham firefight by firing indiscriminately in

an inhabited area and that while so doing he shot Mrs. Panay and caused her death.

### III. Instructions

#### A. Procedural Background

During the hearing on instructions, the military judge asked defense counsel whether he requested any special defenses or instructions "under murder two or murder three." Defense counsel requested an instruction on accident. The military judge opined that an instruction on justification might be warranted if the victim "was an enemy person, . . . or [appellant] believed it was." Defense counsel then responded that he did not believe the evidence raised justification, but he asked for an instruction on mistake. The military judge asked:

MJ: Under murder two?

DC: Yes, sir.

MJ: Not three?

DC: Yes, sir.

MJ: So this would only go to murder two, right?

DC: Yes, sir.

The military judge agreed to give an instruction on mistake of fact but not on accident.

The discussion then turned to the lesser-included offense of "murder three." After defense counsel argued that involuntary manslaughter and negligent homicide were lesser-included offenses, the military judge asked, "Or was it a mistake, which would be a complete defense?" Defense counsel responded, "Well, we can just give them that one and go home sir, or we could move for a finding. (pause) Yes, sir, that's right. And what we would ask is that the panel be permitted to examine the conduct against that whole scale."

After a brief recess, the military judge and defense counsel had the following dialogue about instructions:

MJ: I'm having some problem with this mistake instruction you've requested. As I understand it, you're asking for mistake, but I'm not sure what issue you're getting at. Mistake of fact or law goes to specific or general intent.

DC: Yes, sir.

MJ: And here we're talking about intent to kill or inflict great bodily harm. The mistake doesn't relate to intent to kill or inflict great bodily harm. You're talking about a mistake as to the victim, as I understand it. If there's a mistake as to the victim and the accused honestly and reasonably believed that he was shooting at an enemy, it would seem to me that that would go toward legal justification or excuse for the firing. *All of these murder offenses require that the killing be unlawful and unlawful is when it's done without legal justification or excuse.* Now it would seem to me that your argument is going toward that particular issue, not the intent to kill.

DC: Well, yes, sir. Then we'd ask that Your Honor give the mistake and give the justification.

MJ: Well, what specifically are you asking me to tell the court about mistake, as far as specific intent?

DC: I think that PFC McMonagle, sir, a mistake as it relates to the target he fired at.

(Emphasis added.) After further discussion, the military judge concluded the discussion of special defenses to murder as follows:

MJ: Well, based upon that, *I think, as far as all of these murder charges and the lesser included, that I will advise the court that the killing of a human being is unlawful when done without legal justification or excuse. If the accused honestly and reasonably believed that this was an enemy that he was authorized to fire at, then the killing is not unlawful.*

DC: Yes, sir.

MJ: Even the fact that he misfires and kills someone else, you know, in any wartime situation that's a fact of combat. *You may fire at what you believe to be enemy and if you miss and hit somebody else or are mistaken, it's still justified.* Do you agree with that?

DC: Yes, sir.

MJ: All right. For the record, though, you're still asking for a mistake?

DC: Well, I think mistake applies with the justification.

MJ: Well, your argument doesn't convince me, but, anyway, I'll give that instruction, in the absence of case law or anything else.

(Emphasis added.)

When the military judge instructed the members, he first instructed them on the elements of murder under Article 118(2), including the element "that the killing of Mrs. Panay by the accused was unlawful." Immediately after listing the elements of the offense the military judge instructed the members as follows:

> You are advised that the killing of a human being is unlawful when done without legal justification or excuse.
>
> You are further advised that if the accused honestly and reasonably believed that he was firing in response to an enemy or any other type of combatant, that his actions would be justified.

The military judge then instructed on proof of intent. He concluded his instruction on the elements of Article 118(2) by saying, "Now that's the offense of unpremeditated murder."

The military judge then instructed on Article 118(3), beginning as follows: "Another theory by which you may find the accused guilty of murder, in violation of Article 118, is murder while engaging in an act inherently dangerous to others." He listed the elements of this offense, including the element "that the killing of Leila Edith Dias Panay by the accused was unlawful." He then defined an act "inherently dangerous to others" and showing "wanton disregard for human life." He did not repeat the instruction on justification that he had given for Article 118(2) or expressly instruct the members that an honest and reasonable belief regarding the identity of the victim as a combatant would make the killing justified.

The military judge required the members to vote on the alternative theories of murder separately. He instructed them, "You cannot have half of you [for] unpremeditated murder and half of you under murder while engaging in acts inherently dangerous to others."

Defense counsel did not object to the instructions or request additional instructions. The court members found appellant: "Guilty of All Charges and Specifications." However, the court below examined the findings worksheet and construed the findings to be not guilty of a violation of Article 118(2) but guilty of a violation of Article 118(3). *See* 34 MJ at 855 n. 1 and 858 n. 3.

### B. Duty to Instruct

The military judge has an affirmative, *sua sponte* duty to instruct on special defenses reasonably raised by the evidence. RCM 920(e)(3), Manual, *supra; United States v. Simmelkjaer*, 18 USCMA 406, 40 CMR 118 (1969). "The test whether a defense is reasonably raised is whether the record contains some evidence to which the military jury may attach credit if it so desires." 18 USCMA at 410, 40 CMR at 122. Notwithstanding the waiver provisions of RCM 920(f), we have held that failure to request an instruction required by RCM 920(e)(3) does not waive the error. *United States v. Taylor*, 26 MJ 127, 129 (CMA 1988).

▪ Special defenses include justification (RCM 916(c)), accident (RCM 916(f)), and mistake of fact (RCM 916(j)). A special defense may be raised by prosecution evidence. *See, e.g., United States v. Curtis*, 1 MJ 297, 298 n. 1 (CMA 1976) (self-defense raised by prosecution witnesses and accused's pretrial statements). The military judge's duty to instruct is not determined by the defense theory; he must instruct if the defense is raised. Any doubt whether an instruction should be given "should be resolved in favor of the accused." *United States v. Steinruck*, 11 MJ 322, 324 (CMA 1981).

### C. Special Defense—Justification Based on Accident

▪ The military judge denied the defense request for an instruction on acci-

dent. A death which occurs "as the unintentional and unexpected result of doing a lawful act in a lawful manner" (RCM 916(f)) is an accident and is justifiable. The defense focuses on the unintended and unexpected result of an otherwise lawful act. The defense has three elements:

First, evidence must be introduced that the accused was engaged in an act not prohibited by law, regulation, or order.... Second, this lawful act must be shown by some evidence to have been performed in a lawful manner, i.e., with due care and without simple negligence.... Third, there must be some evidence in the record of trial that this act was done without any unlawful intent.

*United States v. Ferguson*, 15 MJ 12, 17 (CMA 1983) (citations omitted).

On its face, it would first appear that the defense of accident was raised. There was some evidence that appellant was engaged in a lawful act: performing duties as a security force for his unit in a combat zone. There is some evidence that he was acting with due care and without negligence: He twice asked for permission to engage his target and ultimately received permission from his squad leader to fire. Finally, there is some evidence that appellant acted without any unlawful intent. It is undisputed that appellant did not intend to kill an innocent civilian. Appellant's reaction after shooting Mrs. Panay is consistent with innocent intent.

Nevertheless, we conclude that accident was not raised by the evidence in this case. The defense of accident arises from an unintended consequence. There is no evidence that the consequence of appellant's act, *i.e.*, the death of his intended target, was unexpected or unintended. The military judge correctly concluded that the issue raised by the evidence was not whether the consequence of appellant's act of shooting was unexpected or unintended, but rather whether appellant was honestly and reasonably mistaken about the identity of the person he shot. Accordingly, we hold that the defense of accident was not raised.

### D. Special Defense—Justification Based on Mistake of Fact

The military judge agreed to give an instruction on mistake of fact, as it relates to the unlawful nature of the killing, with respect to "all of these murder charges and the lesser included," but he neglected to repeat the instruction with respect to Article 118(3). Appellant argues that mistake of fact goes to two elements of the offense: (1) the heedless or indifferent state of mind required for wanton disregard for human life and (2) the unlawfulness of the killing. The Court of Military Review held that appellant was not entitled to a mistake-of-fact instruction with respect to Article 118(3) because a mistake of fact would not negate the mental state of mind required to commit the offense. We hold that appellant was entitled to an instruction on mistake of fact with respect to Article 118(3).

RCM 916(j) provides:

Except as otherwise provided in this subsection, it is a defense to an offense that the accused held, as a result of ignorance or mistake, an incorrect belief of the true circumstances such that, if the circumstances were as the accused believed them, the accused would not be guilty of the offense. If the ignorance or mistake goes to an element requiring premeditation, specific intent, willfulness, or knowledge of a particular fact, the ignorance or mistake need only have existed in the mind of the accused. If the ignorance or mistake goes to any other element requiring only general intent or knowledge, the ignorance or mistake must have existed in the mind of the accused and must have been reasonable under all the circumstances. However, if the accused's knowledge or intent is immaterial as to an element, then ignorance or mistake is not a defense.

The Court of Military Review held that "mistake ... must negate a mental state of the accused that the prosecution must necessarily prove to establish the offense." 34 MJ at 864. That court further held that the only two "mental state" elements involved in this case were (1) the intentional

act of shooting and (2) knowledge that death or great bodily harm was a natural and probable consequence of shooting. Finally, that court held that "wanton disregard" characterized by "heedlessness or indifference" is not measured subjectively by the state of an accused's mind but is measured objectively by a "qualitative judgment" of the circumstances of his conduct. 34 MJ at 864.

■ The Court of Military Review's interpretation of the state of mind required for a violation of Article 118(3) is inconsistent with the concept of a "depraved heart" which underlies Article 118(3). The terms "wanton," "disregard," "heedless," and "indifferent" all describe an attitude, a mental state. *See United States v. Stokes*, 6 USCMA 65, 70, 19 CMR 191, 196 (1955) (discussing a "so-what" attitude toward probable results). In a depraved-heart murder, the killer's attitude is "not measured in the abstract, but is evaluated in light of the surrounding circumstances that are apparent and known to the perpetrator, or at least should reasonably be apparent and known by him." Milhizer, "Murder without Intent: Depraved–Heart Murder under Military Law," (hereafter Milhizer) 133 Mil.L.Rev. 205, 210 (1991).

Although some courts have held that guilt of a depraved-heart murder should be founded on "an objective assessment of the risk created, regardless of whether the perpetrator actually realized it," *id.* at 234, the weight of authority holds that a person should not be convicted of depraved-heart murder "unless he was subjectively aware of the risk he created." *Id.;* W. LaFave and A. Scott, *Substantive Criminal Law*, § 7.4 at 204–05 (1986). This Court follows the majority view. *See United States v. Berg*, 30 MJ 195, 199 (CMA 1990) (Article 118(3) intended to cover cases where acts "are *calculated* to put human lives in jeopardy"); *United States v. Stokes, supra* (accused must know that acts endangered human life). *See also* para. 43c(4)(b), Part IV, Manual for Courts–Martial, United States, 1984; Milhizer, *supra* at 235–36.

The holding of the court below represents a minority view and is contrary to the decisions of this Court. Accordingly, we hold that the court below erred in holding that mistake of fact cannot rebut the state of mind required for a violation of Article 118(3).

The court below also held that appellant's mistaken belief would not negate the element of unlawfulness. This holding also is incorrect. The military judge correctly deduced that mistake of fact in this case gave rise to a defense of justification. Under the specific facts of this case, the two special defenses of mistake and justification are interrelated. A mistake of fact can negate unlawfulness because ignorance or mistake a fact can produce "a mental state which in turn supports a defense of justification." *Wharton's Criminal Law* § 76 at 369–70 (C. Torcia 14th ed.1978).

■ Murder under Article 118(3) is a general-intent crime. *United States v. Craig*, 2 USCMA 650, 659, 10 CMR 148, 157 (1953). Mistake of fact is not a defense to a general intent crime unless it is both honest and reasonable. *United States v. Brown*, 22 MJ 448, 451 (CMA 1986). *See Wharton's Criminal Law, supra* § 76 at 370 (honest and reasonable mistake of fact may produce mental state which supports justification). Accordingly, appellant's mistake as to the identity of the victim must have been both honest and reasonable to raise the defense of justification.

The military judge in this case instructed the court members on justification as a defense to murder under Article 118(2). He commented during the hearing on instructions that he intended to instruct on justification "as far as all of these murder charges and the lesser included." Based on this comment, we agree with the Court of Military Review's observation that the military judge intended to instruct on justification under Article 118(3) as well, but that he "inadvertently omitted instructing the members that 'unlawfulness' means

without justification or excuse." 34 MJ at 863.

We certainly do not believe that a military judge must define a term every time it is used. Nevertheless, in this case the military judge compartmentalized and separated his instructions on Article 118(2) and 118(3) to the extent that his failure to specifically advise the members that justification was a defense to Article 118(3) amounted to failure to give an instruction on a special defense as required by RCM 920(e)(3). He instructed separately on Article 118(2) and 118(3); he did not instruct that the defense of justification based on mistaken identity of the victim was available under Article 118(3) or remind the court members that the same definitions of "unlawful" and "without legal justification or excuse" were also applicable to Article 118(3); and he required the members to vote separately on the two theories of murder.

The net effect of the military judge's compartmentalized instructions was to tell the members that the special defense of justification based on an honest and reasonable mistake as to the identity of the victim was limited to Article 118(2) and not applicable to Article 118(3). Accordingly, we hold that the military judge erred by failing to advise the court members with respect to Article 118(3) that the killing was justified if appellant honestly and reasonably thought that he was shooting at a combatant.

### IV. Conclusions

After reviewing the instructions in this case as a whole, we hold that the military judge correctly denied the request for an instruction on accident, because there was no evidence that death or grievous bodily harm was an unintended or unexpected consequence. The military judge correctly ruled that mistake of fact and the justification based on that mistake of fact were raised by the evidence. Unfortunately, the military judge presented his instructions in a manner suggesting that mistake of fact and justification were only applicable to unpremeditated murder under Article 118(2). There was no issue regarding appellant's knowledge that death or grievous bodily harm was a probable consequence of his acts, but there was a factual issue whether appellant thought he was receiving hostile fire and thought he was firing at a combatant when he shot and killed Mrs. Panay. Based on the evidence of record, we hold that the defense of justification based on mistake of fact was raised, because there is some evidence from which the court members could have concluded that appellant was laboring under an honest and reasonable mistake of fact when he shot and killed Mrs. Panay.

 We hold further that the failure of the military judge to instruct on mistake of fact and justification with respect to Article 118(3) was prejudicial error. The theory of the defense was justification based on mistake of fact. The military judge's omission deprived appellant of the opportunity to have his defense theory considered by the members. *See United States v. Van Syoc*, 36 MJ 461, 465 (CMA 1993) (failure to instruct on defense theory of the case prejudicial error).

 Finally, because instructions on special defenses are not waived by failure to request them or to object to their omission, we hold that the military judge's error was not waived. *See United States v. Taylor*, 26 MJ 127 (CMA 1988).

### V. Decision

The decision of the United States Army Court of Military Review is reversed as to Charge II and its specification (murder in violation of Article 118(3)) and the sentence. The findings of guilty thereon and the sentence are set aside. The record of trial is returned to the Judge Advocate General of the Army. A rehearing on the affected specification and the sentence may be ordered.

Chief Judge SULLIVAN and Judges COX, CRAWFORD, and WISS concur.