**UNITED STATES, Appellee,**

v.

**Private E2 Michael J. CARROLL, 092–50–2825, United States Army, Appellant.**

**ARMY 9501522.**

U.S. Army Court of Criminal Appeals.

27 Jan. 1997.

For Appellant: Frank J. Spinner, Esq. (argued); Captain Eric S. Krauss, JA (on brief).

For Appellee: Captain Robert F. Resnick, JA (argued); Colonel John M. Smith, JA; Lieutenant Colonel Eva M. Novak, JA; Captain Joanne P. Tetreault, JA; Captain Nancy A. Nollmann, JA (on brief).

Before COOKE, GRAVELLE, and ECKER Appellate Military Judges.

## OPINION OF THE COURT

### PER CURIAM.

Contrary to his pleas, a general court-martial consisting of officer and enlisted members convicted the appellant of rape and unlawful entry,[1] in violation of Articles 120 and 134, Uniform Code of Military Justice [hereinafter UCMJ], 10 U.S.C. §§ 920 and 934 (1988). The court-martial sentenced him to a dishonorable discharge, confinement for one year, forfeiture of all pay and allowances, and reduction to Private E1. The convening authority disapproved the finding of guilty of rape and approved the finding of guilty of unlawful entry; he approved so much of the sentence as included a bad-conduct discharge, confinement for four months, forfeiture of all pay and allowances, and reduction to Private E1.

The appellate defense counsel raise four assignments of error: (1) that the evidence is factually insufficient to support his conviction for unlawful entry; (2) that the military judge erred by failing to instruct the members on the mistake-of-fact defense as it relates to unlawful entry; (3) that the convening authority improperly reassessed the sentence after disapproving the finding

of guilty of rape; and, (4) that the sentence is inappropriately severe. We have reviewed the record of proceedings[2] and have considered the briefs and the oral arguments of counsel, and find that the assignments of error are without merit.

### I. Facts

The unlawful entry of which the appellant stands convicted occurred in the barracks room of two female soldiers, Private (PVT) K, who was the victim of the now-dismissed rape charge, and PVT B. Earlier in the evening, an informal party, attended by the appellant and a number of other soldiers, took place in this room and in the adjacent room of PVTs W and F. These two rooms were connected by a common bathroom. All attendees of the party were advanced individual training (AIT) students temporarily assigned to Goodfellow Air Force Base, Texas.

During the party, PVT K became, by most accounts, considerably intoxicated. The appellant observed her behavior, which included sexually aggressive acts toward several of the male soldiers (but not toward the appellant). Around 9:30 or 10:00 p.m., PVT K succumbed to the effects of her imbibing and was helped to her bed by her boyfriend. As she was lying on her bed, the appellant and two other soldiers entered the room and tried to spray shaving cream on her. The appellant testified that PVT K told them she was tired, to leave her alone and to "get out of here." Private K's boyfriend also told them to "get out of here."

Private K then fell asleep or passed out. After midnight, her roommate (PVT B) also went to bed, leaving a light on in the room. Private B was not certain whether she completely closed the bathroom door on their side of the bathroom. Sometime later, the appellant returned to the adjoining room of PVTs W and F to watch a videotaped movie. Although PVTs W and F were lying in bed,

---

1. The appellant was charged with burglary. The members convicted him of the lesser-included offense of unlawful entry.

2. During our review of the record, we noted that two exhibits, photographs of the room where the incident took place, were missing from the record. These exhibits cannot now be found. We

find that the record, despite the two missing exhibits, is "substantially verbatim." Moreover, we find that the absence of the exhibits does not affect our ability to carry out our duties under Article 66(c), UCMJ, as the testimony of witnesses adequately describes the scene of the incident.

they permitted the appellant to lie on the floor and watch the movie. After about fifteen minutes, the appellant went into the bathroom.

According to the appellant, when he turned on the light in the bathroom, a voice from PVT K's room said, "Who is it? Who's there?" The appellant said nothing but poked his head into the room and saw PVT K sitting up on her bed. He testified that she looked at him and then "flopped back" or "rolled over." He testified that "I took that to me [sic], 'Okay, its only you. I can go back to sleep.'" He said he entered the room to "mak[e] sure she was all right," because he "thought she might have been sick from the hard liquor." The appellant acknowledged, however, that he "didn't think it was an emergency," and that he had no permission to enter the room.

Later, on redirect, the following colloquy took place with the defense counsel:

Q: Why did you think that you were walking into [PVT K's] room, if she didn't say, "PVT Carroll, come on in?"

A: Well, Ma'am, like I've already told you, we'd been in there earlier in the evening for an hour or two, coming and going as we pleased ... the doors were open, and no one ever said, "Hey, do you want to come over to my room" or "Hey, lets go over next door" or anything like that. It was just in and out, back and forth.

Q: During any of those times, were you ever told, "I don't want you in here; stay out" by PVT [K]?

A: No, Ma'am.[3]

On recross, the trial counsel asked:

Private Carroll, do you understand that there's a difference between being at a party in an individual's room five hours earlier when there was seven or eight other people there, there were lights on, and everybody's awake, and from going into her room at 2 to 3 o'clock in the morning, with them both sleeping in the bed? Do

you understand that there's a difference in that?

The appellant replied, "Yes, sir, there is."

Private K testified that she became drunk during the party and at some point during the evening, "I passed out ... blacked out." The next thing she remembered was appellant in her bed and on top of her. Similarly, her roommate testified that she awakened and realized that someone was in bed with PVT K.

## II. Factual Sufficiency

■ Counsel first argues there was sufficient credible evidence of either express or implied consent for the appellant to enter the woman's room and that therefore the evidence of unlawful entry is factually insufficient. We disagree. While the appellant testified that he initially entered the room to ascertain if the victim was sick, he also admitted it was not a medical emergency and that he had no permission to enter the room. After having read the record and having taken into account that the members saw and heard the witnesses, we find the evidence legally and factually sufficient. *United States v. Turner,* 25 M.J. 324 (C.M.A.1987).

## III. The Military Judge's Instructions

■ Next, the appellant's counsel argues that the military judge committed prejudicial error when he failed, sua sponte, to instruct on the issue of mistake of fact in relation to unlawful entry. The military judge specifically instructed on mistake of fact regarding the rape charge. Counsel asserts that the factual flow in the case simultaneously raised this defense for both charges. The government argues that the evidence does not reasonably raise the defense for the unlawful entry charge so there was no requirement to instruct. We agree with the government.

At the outset, we note that unlawful entry is a general intent crime. Manual for Courts–Martial, United States (1995 Ed.), Part IV, para. 111c. For general intent crimes, "a successful mistake-of-fact defense must include not only a subjective belief of

---

3. As noted above, the appellant testified earlier that when she retired, PVT K told him "to get out of here."

consent, but also a belief that was 'reasonable under all the circumstances.'" *United States v. Garcia,* 44 M.J. 496, 498 (1996).

 The military judge has an affirmative and sua sponte duty to instruct on all special defenses reasonably raised by the evidence. Rule for Courts–Martial 920(e)(3) [hereinafter R.C.M.]; *United States v. McMonagle,* 38 M.J. 53, 58 (C.M.A.1993); *United States v. Taylor,* 26 M.J. 127, 129 (C.M.A.1988). Failure to request an instruction required by R.C.M. 920(e)(3) does not constitute waiver. *McMonagle,* 38 M.J. at 58. The defense theory of the case is not *determinative* of the military judge's duty to instruct; and, any doubt should be resolved in favor of the accused. *McMonagle,* 38 M.J. at 58. Nevertheless, in determining if the defense of mistake of fact is reasonably raised, we may consider the absence of any defense contention at trial that there was a reasonable mistake of fact and the absence of any request for such an instruction. *United States v. Peel,* 29 M.J. 235, 242 (C.M.A.1989), *cert. denied,* 493 U.S. 1025, 110 S.Ct. 731, 107 L.Ed.2d 750 (1990).

We have reviewed the evidence carefully, particularly the testimony of the appellant, and we find that the issue of mistake of fact as to the entry into the room was not reasonably raised by the evidence.

The appellant's testimony advanced two reasons why he entered the room. First, he wanted to check on PVT K's condition, because he thought she might be sick; and, second, he had been a welcome guest earlier in the evening and thought, therefore, that it was all right to reenter the room. Furthermore, the appellant also seems to ask us to infer that he thought he had implicit permission to enter because PVT K asked (according to the appellant), "Who is it? Who's there?"

With respect to the appellant's first reason, he admitted that he did not believe that it was an emergency when he entered PVT K's room. His desire to check on PVT K, standing alone, did not constitute a mistake as to the circumstances; rather, it was an explanation, albeit a legally insufficient one, why the appellant entered the room.

With respect to the second reason, the appellant's own testimony belied the honesty and the reasonableness of his professed belief that his earlier presence somehow constituted continuing permission to enter. The appellant testified that: neither PVT K nor her roommate, PVT B, gave him permission to enter at this time; previously PVT K had expressly told him to leave; and, entering the room in the early morning hours when the occupants were in bed was far different than being in the room earlier in the evening.

Finally, we have considered whether the query, "Who is it? Who's there?" raised the defense of mistake of fact. We note that the appellant never testified that he thought this constituted permission to enter. Moreover, under the circumstances, we do not see how such a claim could be reasonable.

 We recognize that an entry may be accomplished by the insertion of any part of the body into the property. Manual for Courts–Martial, United States (1995 ed.), Part IV, paras. 55c(3) and 111c. We have therefore considered whether the appellant's act of poking his head around the corner constituted an "entry" here, and hence whether the mistake-of-fact defense applies to this act. We are satisfied that, under the circumstances, the entry of which the appellant stands convicted constituted more than merely poking his head around the corner and included the appellant's movement into the room. Certainly, the parties have so treated it at trial and before this court.

In sum, the appellant asks us to draw from his testimony a claim that he thought he had permission to be in the room and that the military judge should have instructed on mistake of fact as it relates to unlawful entry. We find in the appellant's account neither evidence that the appellant harbored such a belief nor that such a belief would have been reasonable.

 Moreover, we have also closely reviewed the extensive discussions on the record concerning the mistake-of-fact defense, the voir dire of the members, and the opening statements and arguments on findings of both counsel. In these portions of the record, all references to mistake of fact focus on

the offense of rape. It is clear that no one at trial considered the defense of mistake of fact to relate to the entry into the room. We also find noteworthy the absence of a defense objection to the instructions as given and the absence of a request for additional instructions. While the defense's theory of the case and the failure to ask for an instruction are certainly not determinative of the military judge's duty to instruct, these indicia support our view that the defense of mistake of fact as it relates to the entry into the room was not reasonably raised by the evidence.

## IV. The Convening Authority's Decision

■ The appellant also contends that the convening authority was required to order a rehearing on sentence after he dismissed a major offense leaving only a relatively minor offense. Under the circumstances of this case, we disagree.[4]

■ Following trial, the defense counsel, inter alia, asserted that the evidence was insufficient to sustain the convictions regarding both offenses, and asked the convening authority to disapprove the findings; and, failing that, to reduce the sentence. In his addendum to the post-trial recommendation, the staff judge advocate disagreed with the defense contention that the evidence was insufficient. Finding no legal impediment to approval of the findings and sentence, the staff judge advocate recommended that the convening authority approve the sentence as adjudged. However, the staff judge advocate also advised the convening authority:

If you disapprove or change the findings, you must reassess the sentence to one that is appropriate in light of the changed findings and all the other enclosed evidence. You must only approve that sentence which is warranted by the circumstances of the offense and appropriate for the accused in accordance with R.C.M. 1107(d)(2).

As the convening authority, you may approve, disapprove, set aside or modify the findings of the court-martial. You may also approve, disapprove, commute, suspend or conditionally suspend the sentence in whole or in part. Such action may be taken in the interests of justice, discipline, mission requirements, clemency or any other appropriate reason. The action to be taken is a matter of command prerogative and lies within your sole discretion.

We find no error in this advice.[5] See R.C.M.s 1106(d) and 1107(b). We hold that a convening authority has the power to approve a reduced sentence without ordering a rehearing in a situation such as presented here. See United States v. Washington, 23 M.J. 679 (A.C.M.R.1986), pet. denied, 25 M.J. 197 (C.M.A.1987). Accordingly, we find that the convening authority acted well within his authority when he reassessed the appellant's sentence here.

## V. Sentence Appropriateness

■ Finally, the appellant argues that the sentence is inappropriately severe. Using our powers under Article 66(c), UCMJ, we find the sentence appropriate under the circumstances of this case. We note that the convening authority, after disapproving the conviction for rape, significantly reduced the confinement from a year to four months and the dishonorable discharge to a bad-conduct discharge.

The findings of guilty and the sentence are affirmed.

## COOKE, Chief Judge, concurring:

I agree with my brothers as to the disposition of this case and write separately only to elaborate on the convening authority's power regarding approval of a court-martial sentence.

4. All of the precedents cited by both the appellant and the government involve situations where an appellate court has authorized the convening authority to reassess the sentence after the appellate court set aside one or more of several charges and authorized a rehearing on sentence. None of the precedents cited to us involve a convening authority exercising his exclusive and

plenary clemency powers under R.C.M. 1107(b)(1).

5. While the staff judge advocate could have mentioned the convening authority's option of ordering a sentencing rehearing, we do not find the omission critical. See generally United States v. Jordan, 32 M.J. 672, 674–75 (A.F.C.M.R.1991).

The nature of the convening authority's action in this case bears emphasis. The convening authority, as is his prerogative, disapproved the finding of guilty of rape. The staff judge advocate identified no legal issues, including legal sufficiency of the evidence, which would have led to such action; my review of the record discloses no such errors.[1] Thus, the convening authority apparently was exercising his plenary power to disapprove a charge "for any reason or no reason." Rule for Courts–Martial 1107(c)(2)(A) discussion [hereinafter R.C.M.]. "The authority under this section to modify the findings and sentence of a court-martial is a matter of command prerogative involving the sole discretion of the convening authority." Article 60(c)(1), Uniform Code of Military Justice [hereinafter UCMJ], 10 U.S.C. § 860(c)(1) (1988).

Under such circumstances, in my view, the convening authority is free to approve, in his discretion, whatever sentence he deems appropriate for the remaining offenses of which the accused has been found guilty. In so doing, the convening authority is limited only by the maximum punishments authorized by the Manual for Courts–Martial for the remaining offenses or the adjudged sentence whichever is less. In such cases, neither the convening authority nor this court need determine what sentence the court-martial itself would have adjudged for the remaining offenses. *See United States v. Sales,* 22 M.J. 305 (C.M.A.1986).

Although the issue is not before us in this case, it seems the situation would be different if the convening authority were acting to correct a legal error. In such a case the convening authority would be using his clemency power to correct an error early in the process; this is essentially an exercise of judicial economy. An accused who has been harmed by a legal error is entitled to no less relief because the convening authority, rather than an appellate court, has identified the error. Thus, in such a case, the convening authority should apply the *Sales* standard and approve only so much of the sentence as he is "reasonably certain ... would have resulted in the absence of the error at trial." *Sales,* 22 M.J. at 307 n. 3. If the convening authority fails to do so in such a case, then we would be obliged to do so upon our review.

On the other hand, when the convening authority, as is the case here, acts purely in the exercise of his vast clemency powers, he should not be so constrained.[2] Indeed, to apply the *Sales* standard to cases like this one could discourage convening authorities from the exercise of such powers altogether. Of course, our court may only affirm such sentence which we find "correct in law and fact and determine[ ], on the basis of the entire record, should be approved." UCMJ art. 66(c). This is a different exercise, however, than determining what the court-martial would have done had its findings been different.

---

1. The defense's post-trial submissions in this case challenged the *factual sufficiency of the evidence;* it did not challenge the legal sufficiency of the evidence or raise any other errors.

2. It might be asked, how can we tell the difference between these two purposes for the exercise of the convening authority's powers. In most cases, the staff judge advocate's recommendation will identify the reason for disapproval of any findings or reduction in the sentence. Where this is not the case, a review of the accused's submissions under R.C.M. 1105 and the record of trial will usually disclose any obvious errors which may have led to corrective action by the convening authority (or which require further corrective action by appellate authorities).