UNITED STATES, Appellee,

v.

Private First Class Nathan D. LOONEY, United States Army, Appellant.

ARMY 9500433.

U.S. Army Court of Criminal Appeals.

29 May 1998.

* Senior Judge Jonathan C. Gordon took final action prior to his retirement.

For Appellant: Lieutenant Colonel John T. Rucker, JA; Captain Eric S. Krauss, JA (on brief); Major J. Frank Burnette, JA; Captain Eric S. Krauss, JA (on supplemental brief).

For Appellee: Colonel John M. Smith, JA; Lieutenant Colonel Eva M. Novak, JA; Captain John W. O'Brien, JA; Captain Jinny Chun, JA (on brief); Colonel John M. Smith, JA; Lieutenant Colonel Eva M. Novak, JA; Major Virginia G. Beakes, JA; Captain John M. Bergen, JA (on supplemental brief).

Before GORDON, Senior Judge, JOHNSTON and ECKER, Appellate Military Judges.

## OPINION OF THE COURT

ECKER, Judge:

Contrary to his pleas,[1] appellant was convicted by a military judge sitting as a general court-martial of unpremeditated murder in violation of Article 118, Uniform Code of Military Justice, 10 U.S.C. § 918 (1988) [hereinafter UCMJ]. The convening authority approved the adjudged sentence to a dishonorable discharge, confinement for ten years, forfeiture of all pay and allowances, and reduction to Private E1, but credited appellant with ninety-four days towards his sentence to confinement. This case is before the court for automatic review pursuant to Article 66, UCMJ.

---

1. Appellant attempted to plead guilty to the lesser offense of involuntary manslaughter under Article 119(b), Uniform Code of Military Justice, 10 U.S.C. § 919(b). However, his plea was very quickly held improvident, and the military judge entered a plea of not guilty on his behalf to the original charge of unpremeditated murder. *See United States v. Faircloth*, 45 M.J. 172 (1996).

Appellate defense counsel argue that the evidence is factually insufficient to sustain appellant's conviction and that the military judge erred in admitting certain aggravation evidence. On review of appellant's personal claims pursuant to *United States v. Grostefon*, 12 M.J. 431 (C.M.A.1982), we specified the following issues:

I

WHETHER THE APPELLANT MAY PROPERLY BE CONVICTED UNDER ARTICLE 118(3), UCMJ, WHEN THE CHARGE AND THE SPECIFICATION ALLEGE EXCLUSIVELY AN OFFENSE UNDER ARTICLE 118(2), UCMJ.

II

IF SO, ARE THE FACTS SUFFICIENT TO SUSTAIN THE CONVICTION IN THE APPELLANT'S CASE?

We have carefully considered the facts of this case, along with the briefs of counsel on both the original and the specified issues. We hold that appellant was properly convicted of unpremeditated murder under Article 118(3), UCMJ.

### Background and Facts

After visiting another club on the evening of 12–13 November 1994, appellant, his roommate, Private First Class (PFC) C, and two fellow soldiers, arrived at the Flash disco in St. Wendel, Germany. Appellant and PFC C were described as good friends.

Opinion and reputation testimony characterized appellant as a peaceful, nonviolent person and a good soldier. However, earlier in the evening, appellant had displayed a knife to his companions and indicated that he was "ready" if any trouble broke out and that he had the group "covered." Appellant and his companions had been drinking throughout the evening, but were not drunk.

While the group was preparing to leave the Flash disco and return to the barracks, appellant and PFC C got into a physical altercation. Private First Class C, the taller and stronger of the two, appeared to be winning, but both soldiers were throwing and landing blows. Finally, one of the other soldiers stepped between the two, separated them, and physically restrained appellant. Private First Class C took advantage of this development and punched appellant in the face. The peacemaker then turned and restrained PFC C. At this point, appellant and PFC C were facing each other with the third soldier between them. Private First Class C attempted a left punch around the third soldier while appellant landed what appeared to be a direct blow to PFC C's upper body with his right hand. This blow was directed around the third soldier and past a gathering of club patrons pressing on the scene.

No witnesses saw a knife. None of appellant's acts were described as "flailing" or suggesting the waving of a weapon to hold another at bay. Appellant immediately exited the club. As his party began to follow, PFC C collapsed and fell backwards into the atrium. He was taken to a local German hospital, where he died of a lateral, penetrating stab wound to the heart, entering from the left side of the chest. Private First Class C had no other cuts or injuries to his body, including none to his left hand and arm.

Subsequently, a knife identified as appellant's was found on a rooftop within throwing distance of where the automobile used by the soldiers had been parked. Laboratory analysis identified fibers attached to it as being consistent with those in the shirt PFC C was wearing when stabbed.

Appellant was charged with unpremeditated murder using the form specification set forth in MANUAL FOR COURTS-MARTIAL, UNITED STATES (1995 ed.), Part IV, para. 43f [hereinafter MCM, 1995].[2] The form specifi-

---

2. The specification reads:
   In that Private First Class Nathan D. Looney, U.S. Army, did at or near St. Wendel, Germany, on or about 13 Nov 94, murder [PFC C] by means of stabbing him in the chest with a knife.
   and is based on the following form specification:

   In that _____ (personal jurisdiction data), did, (at/on board-location)(subject matter jurisdiction data, if required), on or about _____ 19___, (with premeditation) (while (perpetrating)(attempting to perpetrate) _____) murder _____ by means of (shooting him/her with a rifle) (_____).

cation uses the same operative words to charge murder under subsections 2 and 3 of Article 118. At arraignment and entry of the plea, the offense was described as "murder" or "unpremeditated murder," otherwise unspecified.

The defense never inquired as to the theory of unpremeditated murder on which the government was proceeding[3] nor did they seek to make the specification more definite and certain through a bill of particulars. *See* Rule for Courts–Martial 906(b)(6)[hereinafter R.C.M.].[4] The trial presentations of the parties, and particularly closing argument on findings, reveal that both sides viewed the charge as unpremeditated murder of the type described by Article 118(2).

Appellant did not testify during the findings portion of the trial. His defense focused on the doctrine of self-defense, while alternatively seeking to mitigate culpability to the offense of voluntary manslaughter.

The military judge found appellant guilty, by exceptions and substitutions, of unpremeditated murder as characterized in subsection 3 of Article 118.[5] No objection, motion for mistrial, or request for specific findings was made concerning this finding prior to the end of trial. However, defense counsel later filed a motion with the military judge seeking a mistrial on this basis and asked for a post-trial hearing on the issue. The judge denied this motion and authenticated the record of trial. Subsequently, defense counsel requested that the convening authority direct the military judge to conduct a post-trial hearing pursuant to R.C.M. 1102(a) and Article 39(a), UCMJ. The issue was also cited as error in appellant's R.C.M. 1105/1106 submission. These requests were rejected.

### Law

The question before us is whether the findings of guilty under Article 118(3) can be affirmed as either a lesser-included offense of Article 118(2) or as an alternate theory of

---

This form specification has appeared in the Manual for Courts–Martial since 1951 and addresses all forms of murder covered by Article 118. *See* MANUAL FOR COURTS-MARTIAL, UNITED STATES, 1951, app. 6, para. c. 85 at A–484 [hereinafter MCM, 1951]; MANUAL FOR COURTS-MARTIAL, UNITED STATES, 1969 (Rev. ed.), app. 6, para. c. 86 at A6–15 [hereinafter MCM, 1969]; and MANUAL FOR COURTS-MARTIAL, UNITED STATES, 1984, Part IV, para. 43f [hereinafter MCM, 1984]. A tailored version, deleting language for murders under subsections (1) and (4) is used in the current edition of the Military Judges' Benchbook for unpremeditated murders defined by Article 118(2) and (3). It is exactly the same for both subsections. *See* Dep't of Army, Pam. 27–9, Military Judges' Benchbook, para. 3–42–2, 3–43–3 (30 Sep 1996)[hereinafter Benchbook]. *But cf.*, DA Pam. 27–9, paras. 3–86 IIa., 3–86 IIIa. (1 May 1982) (C2, 15 Oct. 1986)(using specific language to differentiate between the two types or theories of unpremeditated murder). We believe that the approach represented in the 1986 change to the Benchbook has merit and should be incorporated into the pleading process. *Accord United States v. McMonagle*, 34 M.J. 852, 867 n. 4 (A.C.M.R.1992)(Johnston, J., dissenting). Certainly, use of a specification that specifically identified the theory of unpremeditated murder, or both theories (if, for example, a duplicitous style pleading were used) would have prevented much of the confusion and difficulty demonstrated in this case.

3. However, if requested, the prosecution may be required to state if it is proceeding on one, or both, of the theories. *United States v. Sandoval*,

4 U.S.C.M.A. 61, 15 C.M.R. 61, 64, 1954 WL 2252 (1954). *But cf., United States v. McDonald*, 4 U.S.C.M.A. 130, 15 C.M.R. 130, 132, 1954 WL 2264 (1954)(government's opening statement specified one theory, but the evidence warranted submission of the issue on both theories; conviction on a general verdict sustained); *United States v. Vidal*, 23 M.J. 319 (C.M.A.1987)(between theories of perpetrator or aider and abettor, government not required to elect a theory).

4. R.C.M. 906(b)(6) discussion states in pertinent part:

The purposes of a bill of particulars are to inform the accused of the nature of the charge with sufficient precision to enable the accused to prepare for trial, to avoid or minimize the danger of surprise at the time of trial ... when the specification is too vague and indefinite for such purposes.

*See also* 1 FRANCIS A. GILLIGAN AND FREDRIC I. LEDERER, COURT-MARTIAL PROCEDURE § 6–12.00 (1991), n. 16 and accompanying text.

5. The announced findings stated:

MJ: Private First Class Looney, this court finds you: Of the Specification of the Charge: Guilty, except the words "by stabbing him in the chest with a knife"; substituting therefor the words "by engaging in an act inherently dangerous to another, to wit: stabbing PFC [C] in the chest area with a knife"; Of the excepted words: Not Guilty; of the substituted words: Guilty; of the Charge: Guilty.

guilt under the circumstances of this trial. This issue involves three interrelated questions: (a) are the terms used in the pleading sufficient to reasonably implicate the act on which a conviction is based; (b) would appellant be protected against future prosecution for the same conduct; and (c) is there a likelihood of being mislead or having substantial rights prejudiced? The first and second questions relate to notice and double jeopardy. *See United States v. Russell,* 47 M.J. 412 (1998) (citing *United States v. Breicheen,* 27 M.J. 67 (C.M.A.1988); *United States v. Watkins,* 21 M.J. 208 (C.M.A.1986)). The third question implicates fundamental fairness. *See United States v. Moreno,* 46 M.J. 216 (1997).

In the military, the statute and pleadings serve to provide notice sufficient for constitutional requirements.[6] *United States v. Weymouth,* 43 M.J. 329, 333 (1995); GILLIGAN AND LEDERER, supra n. 3, at § 6–12.00. Among other things, the specification (e.g., the pleadings) should be "sufficiently specific to inform the accused of the conduct charged [and] to enable the accused to prepare a defense ..." R.C.M. 307(c)(3) discussion at para. (G)(iii). However, the evidence introduced at trial also serves as a component of notice. *See Weymouth,* 43 M.J at 335; *United States v. Foster,* 40 M.J. 140, 145 n. 5 (C.M.A.1994) and the concurrence by Sullivan, C.J., at 148; *United States v. Davis,* 10 C.M.R. 3, 2 U.S.C.M.A. 505, 1953 WL 1764 (1953)(specifically addressing unpremeditated murder).

"An accused may be found guilty of an offense *necessarily included* in the offense charged ..." UCMJ art. 79 (emphasis added). The Manual for Courts–Martial expands the article's phrase "necessarily included therein" by noting that a lesser offense is included in a charged offense when the "allegations [in the specification] ... either expressly or by fair implication put the accused on notice ... to defend against it...." MCM, 1995, para. 3b(1). Applicable included offenses are determined not only by the scope of the pleadings but by the proof at trial. *See* R.C.M. 920(e)(2) and discussion; DA Pam. 27–9, Ch. 1, Sec. V, Lesser Included Offenses at 50. The Manual lists common lesser or included offenses for each specific crime discussed, "but the lists are not all-inclusive." MCM, 1995, para. 3b(4). Accordingly, the Manual sets out three tests for notice of lesser-included offenses:

(a) All of the elements of the lesser offense are included in the greater offense, and the common elements are identical ...;

(b) All of the elements of the lesser offense are included in the greater offense, but one or more elements is legally less serious ...; *or*

(c) All of the elements of the lesser offense are included and necessary parts of the greater offense, but the mental element is legally less serious ...

MCM, 1995, para. 3b(1). To properly apply these concepts to appellant's case, we must first review aspects of our law of homicide.

Under the Articles of War, murder was defined simply. The offense was sub-divided into two degrees: premeditated and unpremeditated murder. The dividing line between degrees was determined by the authorized punishment.[7] This scheme of differentiation continues today. Subsections (1)–(4) of Article 118 represent four different states of mind proscribed by the crime of murder, not four different crimes. *United States v. Graves,* 47 M.J. 632, 638–39

---

6. The Fifth Amendment to the United States Constitution holds that "No person shall ... be deprived of life, liberty, or property without due process of law ..." The Sixth Amendment builds on the Fifth and requires that "In all criminal prosecutions, the accused shall enjoy the right ... to be informed of the nature and cause of the accusation ..." The Supreme Court has noted that determinations about the scope of a criminal statute or the indictment thereunder, involve issues of due process notice. *Bouie v. City of Columbia,* 378 U.S. 347, 84 S.Ct.

1697, 12 L.Ed.2d 894 (1964)(cited in *United States v. Berg,* 30 M.J. 195, 200 (C.M.A.1990)).

7. Article of War 92 stated in pertinent part: "Murder[ ]—Any person subject to military law found guilty of murder shall suffer death or imprisonment for life, as a court-martial may direct; but if found guilty of murder not premeditated, he shall be punished as a court-martial may direct ..." MCM, 1949, app. 1, Art. 92 at 296. The availability of the death penalty differentiates the degrees.

(Army Ct.Crim.App.1997). *But see McMonagle,* 34 M.J. at 868 n. 5 (Johnston, J., dissenting).[8]

The mental element for murder historically has been described as malice aforethought. It may be either express, or it may be implied or imputed.[9] While Article 118, UCMJ, eliminated the term from the statutory definition, "[n]o change, however, was effected in the substantive crime of murder [as expressed in the Articles of War]." *McDonald,* 15 C.M.R. at 134. The *McDonald* court went on to note:

> The different states of mind [expressed by malice aforethought under the Articles of War] were set out in a separate subdivision [of Article 118 for punitive purposes] ... and to permit each to be more easily dealt with at trial.... It is clear from this that Article 118, supra, defines but one crime.... [The] subdivisions [including](2) and (3) describe the states of mind characterizing murder in a lesser degree.

15 C.M.R. at 134 (citations omitted).

Article 118(2) and (3) constitute unpremeditated murder in the military. *United States v. Judd,* 26 C.M.R. 881, 890, 1958 WL 3497 (A.F.B.R.1958); *Sandoval,* 15 C.M.R. at 64. Subsection 2 defines a specific intent crime while subsection 3 involves general intent. *United States v. McMonagle,* 38 M.J. 53, 60 (1993)(citing *United States v. Craig,* 2 U.S.C.M.A. 650, 659, 10 C.M.R. 148, 157, 1953 WL 1795 (1953)). Both subsections are alleged by the same form specification and constitute alternate theories of unpremeditated murder. *See McMonagle,* 38 M.J. at 54 (alternate theories); *Berg,* 30 M.J. at 196; *United States v. Dacanay,* 4 U.S.C.M.A. 263, 15 C.M.R. 263, 265, 1954 WL 2286 (1954); *McDonald,* 15 C.M.R. at 132 (same specifica-

tion). *But cf., United States v. Valdez,* 35 M.J. 555 (A.C.M.R.1992)(tailored specification may be sufficient to fix the theory of murder being prosecuted).

The elements of proof for both theories are contained in the Manual for Courts–Martial. *Id.,* at paras. 43b(2), 43b(3). The only significant difference concerns malice or mental intent. For subsection 2 of Article 118, this is a single concept stated as a "[specific or focused] intent to kill or inflict great bodily harm." MCM, 1995, para. 43b(2)(d). *See also Berg,* 30 M.J. at 198; *United States v. Hartley,* 16 U.S.C.M.A. 249, 36 C.M.R. 405, 409, 1966 WL 4499 (1966); *Davis,* 10 C.M.R. at 6. In subsection 3 of Article 118, the offense is bifurcated and stated as: (a) an "act inherently dangerous to another" showing "wanton disregard for human life" for which (b) "the accused knew that death or great bodily harm was a probable consequence." MCM, 1995, para. 43b(3). This imputed malice will support a finding of guilt under subsection 3 even if the accused has no intent to kill or inflict great bodily harm or specifically wishes that such a result will not occur. *Id.,* at para. 43b(3)(c) and (d).

The accused's knowledge of the probable consequences means actual knowledge, which may be proved by circumstantial evidence. *Id.,* at para. 43c(4)(b); *United States v. Stokes,* 6 U.S.C.M.A. 65, 19 C.M.R. 191, 194–96, (1955); *Milhizer, supra* note 8, at 218. Wanton disregard for human life is defined as conduct reflecting heedlessness, indifference, recklessness, a depraved or "so what" attitude about the probable fatal consequences of an act, or some combination thereof. *See generally* MCM, 1995, para. 43c(4)(a); *Berg,* 30 M.J. at 200; *Stokes,* 19 C.M.R. at 196; *Sandoval,* 15 C.M.R. at 66;

---

8. *See also* the Proof sections of paragraph 197, MCM, 1951 and the pre-Code Proof section at paragraph 179a, MCM, 1949. The 1951 Manual set out the elements for murder contained in each of the Article's four subsections in one grouping, as follows:
   (a) the victim is dead;
   (b) due to an alleged act or omission of the accused;
   (c) while possessing or executing:
   (i) a premeditated design, or
   (ii) intent to kill or cause great harm, or
   (iii) a wanton, inherently dangerous act, or

(iv) any one of five named felonies.
*See* MCM, 1951, para. 197.
   Later editions of the Manual for Courts–Martial moved to four separate sets of elements revolving around the four "states of mind." *See* MCM, 1969, para. 197(b)–(e); MCM, 1995, para. 43b. These refinements give the impression of four separate offenses.

9. Major Eugene R. Milhizer, *Murder Without Intent: Depraved–Heart Murder Under Military Law,* 133 Mil.L.Rev. 205, 207 (1991).

*McMonagle*, 34 M.J. at 861. The phrases "inherently dangerous to another" and "disregard for human life," given the specific amending of Article 118(3) in 1992,[10] now contemplate an attitude of wantonness toward human life as a general value and can include circumstances involving only one person. *See also* MCM, 1995, para. 43c(4)(a).

Neither subsection 2 nor 3 of Article 118 is listed in the Manual as a lesser-included offense of the other, nor have they been so listed in earlier editions. *See, e.g.,* MCM, 1951; MCM, 1969, app. 12, Table of Commonly Included Offenses at 539. *Cf. McMonagle*, 34 M.J. at 867 (Johnston, J., dissenting).

### Analysis

■ Appellant was properly charged using the approved specification form alleging both the specific intent and wanton act theories of unpremeditated murder. Further, the government was free to proceed with its proof under either or both theories without advising the defense of its intent to do so, and, under *McDonald*, was not bound to its theory of prosecution if the proof at trial justified a change. Appellant did not contest this at trial.

We are satisfied that the "allegations [in the specification] ... either expressly or by fair implication put the accused on notice ... to defend against" both theories. MCM, 1995, para. 3b(1). Further, the difference between the alternate theories went to the question of malice. Certainly, by the close of the evidence on the merits the fact that both theories were implicated was clear. This is especially true in light of a 1992 change to Article 118(3) that brought it closer to the form of unpremeditated murder on which the defense focused. We also note that the defense sought to characterize appellant's conduct as the lesser offense of involuntary man-

slaughter during the failed plea attempt, and then alternatively, with the lesser offense of voluntary manslaughter during the trial. Given the parallels in the legal differences in these lesser-included offenses and similar differences between the theories of unpremeditated murder, we are satisfied that the defense was on notice that both theories of unpremeditated murder applied in this case.

In reviewing the record, we find that appellant's presentation of evidence was in no way hindered regardless of the theory considered. To the contrary, the defense presentation was thorough, the cross-examination focused, and every appropriate defense and fact bearing on the question of reasonable doubt was raised and argued. Finally, there is no evidence of government misconduct or affirmative acts to misrepresent or mislead the defense concerning the theory of prosecution.

Notwithstanding the military judge's findings, we note that the evidence presented at trial supported both the wanton act theory and the specific intent theory of unpremeditated murder. The judge's findings by exceptions and substitutions did not "substantially change the nature of the offense or ... increase [its] seriousness ... or the maximum punishment." R.C.M. 918(a)(1); MCM, 1995, para. 43e(2). *Cf. Moreno*, 46 M.J. 216 (citing *United States v. Collier*, 14 M.J. 377 (C.M.A.1983)(finding by variance of overt act different than that alleged in the specification charging conspiracy not a substantial change; accused not prejudiced)). Accordingly, the specification sufficiently identified the act upon which appellant's conviction was ultimately based and permitted him to prepare a defense. Further, the findings did not change the offense from unpremeditated murder or increase the potential punishment.

10. National Defense Authorization Act for Fiscal Year 1993, Pub.L. No. 102–484, 106 Stat. 2315, 2596 (1992) changed the word "others" in the old version of subsection 3 to "another." This change was made in response to *Berg*. MCM, 1995, app. 23, para. 118, at A23–12. The *Berg* holding relied on *Davis'* conclusion that " 'inherently dangerous to others' [is conduct that] is directed towards persons in general rather than against a single individual in particular—that is ... a 'wanton disregard of human life' in the general or multiple sense." *Davis*, 10 C.M.R. at 9. This change also casts doubt on similar aspects of the holdings in several older cases discussing unpremeditated murder under Article 118(3). *See, e.g., United States v. Holsey*, 2 U.S.C.M.A. 554, 10 C.M.R. 52, 1953 WL 1772 (1953); *United States v. Gallagher*, 23 C.M.R. 591, 598, 1957 WL 4570 (A.B.R.1957); *United States v. Ransom*, 12 C.M.R. 480, 490, 1953 WL 2280 (A.B.R.1953); *United States v. Carlton*, 12 C.M.R. 501, 509, 1953 WL 2284 (A.B.R.1953).

Appellant is therefore protected from future prosecution for the same conduct based on these findings and suffered no prejudice to his substantial rights.

■ Next we turn to appellant's contention that the evidence is factually insufficient to support his conviction. When testing a case for factual sufficiency, this court must, after weighing the evidence and making allowances for not having seen the witnesses in person, be convinced that an accused is guilty beyond a reasonable doubt. *United States v. Turner*, 25 M.J. 324 (C.M.A.1987). We are so convinced.

■ More specifically, we find that the drawing and thrusting of an open knife in one's hand during a fist fight in a crowded bar constitutes an intentional and inherently dangerous act. Further, the thrusting of that knife around one person and past pressing patrons during the jostling of a tumultuous confrontation in a crowded bar, evidences a wanton disregard of the human life of another. Appellant knew of those circumstances. Because the evidence supports either theory of malice, we find the military judge's announced findings are factually sufficient.

■ The appellant also claims self-defense precludes his conviction. Self-defense in homicide cases excuses the killing where the accused reasonably apprehends he may suffer death or grievous bodily harm, and believes the force used was necessary for protection from that threat. R.C.M. 916(e)(1); *United States v. Martinez*, 40 M.J. 426, 430 (C.M.A.1994)(citing *United States v. Jackson*, 15 U.S.C.M.A. 603, 36 C.M.R. 101, 1966 WL 4427 (1966)). However, self-defense is not available where an accused is an aggressor, engages in mutual combat, or provokes an attack and has not withdrawn or broken off the fight before the claimed act of self-defense. R.C.M. 916(e)(4). Because the government bears the burden to disprove this defense where it is placed in issue by some evidence, the *Turner* test for factual sufficiency applies equally to this issue. *Turner*, 25 M.J. 324.

■ Appellant aggressively pursued a mutual combat situation and chose to turn a simple fistfight into a deadly confrontation by using his knife. There is no evidence justifying this escalation. There is also no evidence appellant desired to end or breakoff the combat. His assailant was his roommate and good friend, not an unknown bar brawler of uncertain propensities and intentions. He was not being severely beaten or in jeopardy of suffering death or great bodily harm. Finally, another friend and member of appellant's group was attempting to break up the confrontation. The victim was being held at the time of the stabbing. Accordingly, the evidence is factually sufficient to rebut appellant's claim of self-defense.[11]

The remaining allegations of error, to include those raised personally by the appellant pursuant to *United States v. Grostefon*, 12 M.J. 431 (C.M.A.1982), are without merit.

The findings of guilty and the sentence are affirmed.

Senior Judge GORDON * and Judge JOHNSTON concur.

11. The evidence also establishes that appellant's use of the knife was an intentional and focused act. In arguing for voluntary manslaughter as a lesser finding of culpability, the defense conceded as much. While the "sucker punch" thrown by PFC C just before the knifing undoubtedly made appellant mad, we do not find it to constitute, in the context of an on-going fistfight, adequate provocation likely to incite uncontrollable passion. Further, appellant's stated predisposition to use his knife, the absence of rage or heightened agitation, and his apparent controlled exit from the club, suggest an absence of such passion. *See* MCM, 1995, para. 44c(1)(b). We find no basis to define appellant's conduct by the lesser offense of voluntary manslaughter and reject that claim.

* Senior Judge Jonathan C. Gordon took final action prior to his retirement.